## AMERICAN TIN PLATE CO. v. LICKING ROLLER MILL CO.

### (Circuit Court, E. D. Kentucky. April 1, 1902.)

1. TRADE-MARKS AND TRADE-NAMES—"INFRINGEMENT"—COPYING ESSENTIAL FEATURE OF TRADE-MARK.

About 1840 a firm in Wales adopted as a trade-mark for terneplate manufactured by it, by a secret process, the letters of "M. F." in monogram inclosed within a circle. They subsequently granted a license to use the process and trade-mark to a manufacturer in the United States, which was afterward acquired by complainant, and the trade-mark was registered in this country. The plate so made was specified by architects, and ordered and designated by dealers as "M. F." terneplate. *Held* that, while the letters were used by the proprietors on their goods only in monogram inclosed within a circle, which constituted the technical trade-mark, they were its essential feature, and that any use of such letters by another to designate a different plate, either alone or in connection with other letters or words constituting a different dress, was an infringement, and clearly so where such use was calculated or likely to deceive purchasers or users.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 64.]

2. SAME.

Where, by the use of a trade-mark, the goods of a manufacturer have come to be known by a particular name, the adoption by a rival manufacturer of any mark or device which causes his goods to become known in the market by the same name may be an infringement of the trade-mark.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 66, 67.]

3. SAME—EVIDENCE TO ESTABLISH INFRINGEMENT.

To establish infringement of a trade-mark, it is not essential to show that any one has actually been deceived, or an intent to deceive, although proof that persons have been deceived is pertinent and persuasive evidence that the mark complained of is calculated and was intended to deceive.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 64.]

In Equity. Suit for infringement of trade-mark.

This was a proceeding in equity brought to restrain infringement of trade-mark and unfair competition. About 1840, R. B. Byass & Company, at Port Talbot, Wales, while engaged in the business of manufacturing terneplate, devised a secret process for its manufacture, and adopted for terneplate made by them under this process a trade-mark consisting of the letters "M. F." in monogram inclosed within a circle as follows:

R. B. Byass & Company continued the manufacture of this terneplate at Port Talbot and its sale under the trade-mark "M. F." both in England and the United States until August 30, 1897, when they licensed the Elwood Tin Plate Company, of Elwood City, Ind., to use the secret process and the trade-mark upon terneplate made by that company according to the process. A plant for the manufacture was erected by the Elwood Tin Plate Company under the supervision of R. B. Byass & Company, and workmen from their establishment skilled in the manufacture under the process were employed. R. B. Byass & Company became stockholders in the Elwood Tin Plate Company and one of the firm a director. On January 1, 1900, the Elwood Tin

Plate Company went out of business, surrendered its license to R. B. Byass & Company, and on January 4, 1900, transferred all its remaining assets, including the plant at Elwood City to the American Tin Plate Company, the complainant in this cause. In March, 1900, the complainant purchased from R. B. Byass & Company the secret process, the good will of the business of making terneplate under it, and the exclusive right to the trade-mark "M. F.," and thereafter employed the process in making terneplate at the Elwood City plant of the American Tin Plate Company, and marked the product so manufactured with the trade-mark. It was shown that the terneplate of the American Tin Plate Company was ordered, specified, and referred to by architects, dealers and users as "M. F. terneplate" though the form in which these letters were used upon the product was always as a monogram inclosed in a circle. Defendant, Licking Roller Mill Company, was a Kentucky corporation with a rolling mill at Covington, Ky. Shortly before the institution of the suit it began the manufacture of terneplate, which it marked as follows: M. F. H., M. F. H., and M. F. H. Defendant contended that it had acquired the right to use the letters "M. F. H." from a man named Murray F. Herman, of Dayton, Ky., whose initials they were. It appeared that there was a Martin Herman, who was a hardware dealer and cornice maker at Dayton, but who had never manufactured tin or terneplate. Complainant contended that his name was Martin Herman and not Martin F. Herman. It was shown that the sign over his place of business was "Martin Herman," that his name given in the city directories was Martin Herman, and that property was transferred by him under the name "Martin Herman," and that he was known as Martin Herman and not Martin F. Herman. Exceptions to the bill and a general demurrer filed by the defendant were overruled. The cause came on for hearing upon pleadings and proof. It was contended by defendant that it had acted in good faith, that it had a right to use the mark, and that, since the form in which complainant had used the trade-mark was the letters "M. F." as a monogram inclosed in a circle, the use by defendant of the letters "M. F. H." without the circle did not amount to an infringement.

Mackoy & Lowman (Frank F. Reed and Edward S. Rogers, of counsel), for complainant.

S. D. Rouse, for defendant.

COCHRAN, District Judge. Counsel for defendant emphasizes the fact that the design which the complainant and its predecessor in title have always used to mark the terneplate manufactured and sold by them has been the letters "M. F." in monogram inclosed within a circle; and that they have never used those letters for that purpose, except in that way. He draws the conclusion from this circumstance that complainant's trade-mark is those letters so disposed and accompanied, and not those letters differently disposed or accompanied. In other words, his position is that its trade-mark is to be determined by what has been used by complainant and its predecessor, and not by what they have claimed was the trade-mark, and, so determining it, it must be held that its trade-mark is those letters with such disposition and accompaniment, and not those letters without either. According to this view of the matter, the letters "M. F." not in monogram and without any accompaniment is not complainant's trade-mark.

It seems to be true that the mark which has always been used is, as claimed, the letters in question in monogram within a circle. Those letters seem never to have been used upon the goods in marking them

in any other way. At least there does not seem to be any evidence in this record of such use. It may also follow from this, that, strictly speaking, complainant's trade-mark is those letters in monogram within a circle, and not otherwise arranged or associated. But conceding all this to be true, what follows from the concession? It does not follow from this that in order for the trade-mark to be infringed it is necessary that the mark used by the infringer should be exactly the same as the trade-mark, and that it cannot be infringed by the use of those letters not in monogram and not within a circle. Their use in any way that is calculated or likely to deceive a purchaser of the infringer's goods into believing that he is purchasing complainant's goods is all that is necessary to constitute an infringement. I doubt whether those letters can be used to mark terneplate in any way without their use being an infringement. The letters "M. F." are the essential features of the trade-mark, and it is so claimed in the registry thereof in the Patent Office. All else is mere dress, if used not in monogram and unassociated, i. e., if all that is used is the plain English capitals in a straight line, they may be said to be used nakedly or without dress. If used, as defendant has been using them, i. e., accompanied with other letters, or with certain words, they may be said to be used with a different dress from that used by complainant. Can it be said then that the fact that those letters have been used without dress or with a different dress from that used by complainant prevents their use from being an infringement? I hardly think so; and that without any specific consideration of whether or not, in such form, they are calculated to deceive the purchasers of terneplate. The fact that the alleged infringer has made use of the essential feature of complainant's trade-mark which is, as conceded above, the letters "M. F." in monogram within a circle, characterized by defendant's counsel as its "technical" trade-mark, though in an entirely different form, would seem to be sufficient. The question whether the mark used by the alleged infringer was calculated to deceive the public would not cut any figure in determining whether there had been an infringement if the mark so used were identically that which is claimed to be the trade-mark. So, if the mark so used contains the essential feature of the trade-mark, but in a different form, that question should not cut much, if any, figure in the case. Would counsel contend that a manufacturer or seller of terneplate could mark his goods with the English capitals "M. F." in a straight line without any accompaniment with impunity, or that the owner of the trade-mark would have to show that some one had been deceived by such use before he would be entitled to an injunction? It would seem not. Yet in such case the monogram and the circle both are gone, and one looking at the two marks would not have the slightest difficulty in saying that the two marks were not the same. Does it make any difference then that the letters are so used with an accompaniment, as in this case, with additional letters or words? I think not.

But if we take into consideration the element of being calculated or likely to deceive, such use of the essential feature of complain-

ant's trade-mark in a different form must be condemned; and for the reason, if none other, that it will have a tendency to cause the goods so marked to be known in the market by the same name identically as that by which complainant's goods are known.   It is shown by the evidence in this case that when complainant's goods are spoken or written about they are called "M. F." terneplate.   They have acquired that name in the market.   When the letters are used in this way, it is not in monogram or inclosed within a circle.   They cannot be so used when spoken, and it is useless labor when written.   They are only so used when stamped upon the goods.   The use by defendant of the same letters accompanied with other letters or with certain words will have a tendency to cause their goods to be known by the same name as complainant's.   The fact that there is no evidence in the record that in the short time they have been used they have acquired that name is not sufficient to rebut this inference.   That, if such is the case, there has been an infringement because of likelihood of deception in this way is well put in the following quotation from the opinion of Lord Cranworth in the case of Seixo v. Provezende, L. R. 1 Ch. App. 192, to wit:

"If the goods of a manufacturer have, from the mark or device he has used, become known in the market by a particular name, I think that the adoption by a rival trader of any mark which will cause his goods to bear the same name in the market may be as much a violation of the rights of that rival as the actual copy of his device."

And this statement of the law is borne out by many authorities cited by counsel for complainant.

Then, as to the fact that there is no evidence that any purchaser of terneplate has been deceived, and the further fact that according to defendant's claim there was no intent on its part to deceive and to get a part of complainant's trade, both of which facts are also emphasized by counsel for defendant.   To this it is perhaps sufficient to answer that it is not an essential part of complainant's case, in view of the positions heretofore taken, that any one should actually have been deceived, or that there was an intent on defendant's part to deceive.   Such facts are mainly, if not exclusively, pertinent in this sort of case in their having a tendency to show that the particular mark used and complained of is calculated to deceive.   The fact that persons have been deceived, and that in the user's judgment they will be deceived, is quite persuasive, if not conclusive, of the fact that the mark in question is calculated to deceive.   And yet such conclusion may be reached without the aid of such significant circumstances. As to the matter of intent on defendant's part, in view of the value of complainant's trade-mark, and defendant's knowledge when it adopted the marks complained of, of those marks embodying the essential feature of complainant's trade-mark; of the explanation as to why defendant came to adopt them being open to question, to say the least; and of the fact that when complaint of their use was made, though seemingly not much value or importance is attached to them by defendant, it refused to abandon all claim or right to use them, though, possibly, the court may be in error in this particular—it seems to be more reasonable from the evidence to con- •

clude that the defendant was not entirely free from a desire to get the benefit of complainant's trade by the use of the marks adopted by it.

What I have said in this opinion is entirely informal. It is devoted to a consideration of the positions advanced by defendant's counsel, because I announced at the conclusion of the argument that I felt quite sure that complainant is entitled to the injunction it seeks, and only took it under advisement, in order that I might consider those positions, which have been advanced with earnestness and sincerity, more carefully. Such consideration has resulted in a deepening of my conviction that the injunction should be granted.