**CALIFORNIA CANNERIES CO. v. BEAR GLACÉ CO.**

Patent Appeal No. 2502.

Court of Customs and Patent Appeals.

Dec. 1, 1930.

Eugene E. Stevens, of Washington, D. C. (Edward D. Jones, of Chicago, Ill., of counsel), for appellant.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellee filed application for the registration of the trade-mark "Bear" for glacé fruit. Appellant opposed such registration on the ground of its prior use of the word on goods claimed to be similar, in the sense of the trade-mark registration statute.

The Examiner of Trade-Mark Interferences rendered decision dismissing the notice of opposition and adjudging appellee entitled to the registration sought. Upon appeal the decision of the examiner was affirmed by the Commissioner of Patents, and opposer has appealed to this court, assigning errors.

In its notice of opposition appellant pleaded certain of its own registrations and relied upon its use and registration of the notation "Bear Brand," in connection with the representation of a bear, upon canned fruits and canned vegetables.

In the decisions of the examiner and the Commissioner of Patents there was agreement in finding that:

" * * * It was conceded that the marks were substantially identical and the opposer had shown prior use of its mark on its goods."

The decisions of the tribunals below turned wholly, therefore, upon the question of whether the goods are of the same descriptive properties. They held them not to be, and this presents the only issue upon which it is necessary for us to pass.

There was no appearance for appellee before us either by brief or in oral argument.

Appellant, according to the record in the case, cans various fruits, such as peaches, pears, and apricots, and also cans a fruit salad, upon all of which its registered trademark is used. Its mark is also used on canned vegetables, such as spinach, asparagus, and tomatoes. Also it is in evidence that its mark has been used, to some extent, upon dried fruits. Its sales have been quite extensive and have been made in various parts of the United States and in several European countries, in some of which its marks have been registered.

The product of appellee is produced, according to the testimony of Mr. De Vito, its president, in the following manner:

"It takes practically a month and sometimes over a month to cure the fruits right. Generally the fruit is bleached first, according to the colors. It goes under the bleaching process. Then it is brined. After the fruit is through the brine fifteen days or sometimes a month—it depends on the time of the year,—and then it goes to the boiling process. After the fruit is boiled it goes under running water which cleans out all the chemicals from the fruits. After that it is placed under the syrup test. We cook the syrup to a certain density and it has to be cooked about a dozen times. Every week or so we cook the fruits and bring them to a high density and let all the water out of the fruits, allowing the syrup to enter. This is done for about a month. After that state there is a process that we call the glacé, and we give the last coat, which is called the glacé coat; after that it is boxed and is ready to be sold."

Appellee's products have been sold in various states and are articles that enter into interstate commerce.

The record discloses that many varieties of fruits are used in making the glacé products, including all the varieties which appellant cans and a number of others.

It thus appears that the same fruit articles are treated and dealt in by both parties. They are treated in different ways, to be sure, but both in ways that preserve them for use. There is a difference shown in the record as to the general practice in packing the respective products, although it appears that in some instances glacé products have been packed in tin boxes. It also appears that, to a limited extent, the respective articles are handled by the same dealers, although this is not true in the majority of cases. One of the officials of the canneries company testifies that the production of glacé fruit is a possible line of natural expansion for his company.

This court, since jurisdiction of appeals from the Patent Office was transferred to it, from the Court of Appeals of the District of Columbia, by the Act of March 2, 1929 (45 Stat. 1476), has had numerous occasions to pass upon the meaning of the words "of the same descriptive properties" appearing in the Registration Act (15 USCA § 85). In so doing reference has been made to conflicts in prior decisions of other courts having jurisdiction of trade-mark registration and trade-mark infringement cases. It has been our endeavor to deduce from the statute, and from the court decisions construing it, sound general rules applicable in cases arising under it.

It is not deemed necessary here to review all these decisions, but a few may be properly referred to.

In Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co. (Patents) 40 F.(2d) 106, 107, we said:

"* * * This court holds that the word 'class' and the phrase 'same descriptive properties' as used in * * * section 5 [trademark registration act] are synonymous in their meaning."

Proceeding under this rule, we held that coffee and tea are of the same class, and possess the same descriptive properties, as horse-radish, olive-spread, cranberry jelly, relish-spread, peanut butter, etc.

In California Packing Corporation v. Tillman & Bendel (Patents) 40 F.(2d) 108 (Cust. & Pat. App.), wherein many authorities were reviewed, it was held that confusion would likely result from the use of similar marks upon cans of coffee and cans of fruits, vegetables, preserves, jelly, honey, etc.

In Sun-Maid Raisin Growers of California v. American Grocer Co. (Patents) 40 F.(2d) 116 (Cust. & Pat. App.), wherein again numerous authorities were cited, it was held that confusion in trade would likely result from the use of similar marks upon raisins, raisin syrup, and baking powder, all used in baking, and wheat flour.

Baking powder and self-rising flour were held, in Heekin Co. v. Lawrenceburg Roller Mills Co. (Patents) 40 F.(2d) 119 (Cust. & Pat. App.), to possess the same descriptive properties.

In addition to the foregoing decisions by this court, there may very properly be cited

the case of Di Santo v. Guarneri, 57 App. D. C. 89, 17 F.(2d) 677, 679. An issue there was as to the similarity of olive oil and tomato paste. The Court of Appeals of the District of Columbia held that confusion would likely result from the use upon these goods of identical marks, "and not only the maker of the tomato paste, but the public as well, would be deprived of the protection which it was obviously the purpose of the trade-mark statute to give."

Numerous other cases might be cited, but the foregoing, we think, are sufficient to illustrate the issue here involved.

The basic material of certain of the respective products, manufactured by the parties to the instant case, are the same—fruits. They are so treated, in each instance, as to preserve them for consumption.

The finished products are sold in the same markets and, in some instances, by the same dealers. It so happens that in this particular instance they are manufactured in the same section of the country—California.

We are of opinion that the respective fruit products are so nearly similar as that, under the foregoing authorities, they fall within the language of the statute, "of the same descriptive properties," and that confusion in trade would likely result from applying trade-marks to them which are substantially identical.

The familiar rule that any doubt which may exist should be resolved in favor of the original entrant may very properly be invoked. The marks themselves have nothing about them that is suggestive of the character of the goods. As related to the particular products of the respective parties, the word "Bear" and the representation of the animal are fanciful and arbitrary.

It would seem that having so wide a field from which to make selection, applicant (appellee) might choose a mark which would be fully suited to its purposes without appropriating the one which opposer (appellant) has so long used in its field of endeavor, to which the field of appellee bears so close a resemblance.

We feel that, under the statute, as construed in the cases cited, the opposition must be sustained and the registration denied.

The decision of the Commissioner of Patents is therefore reversed.

Reversed.

Court of Customs and Patent Appeals.
Dec. 1, 1930.

Byron B. Collings, of Washington, D. C. (John S. Barker, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.