## MARCUCCI v. UNITED CAN CO., Inc. *

(District Court, E. D. New York. October 19, 1921.)

1. **Trade-marks and trade-names and unfair competition ☞70(4)—Unfair competition by imitation of labels.**

   Complainant, a manufacturer of tin cans for olive and cotton seed oil, who adopted and has used for several years a distinctive label by which his cans have become widely known to the trade, *held* entitled to an injunction to restrain the use by a competitor on similar cans of a label which is, and was intended to be, a practical reproduction of complainant's.

2. **Trade-marks and trade-names and unfair competition ☞3(4)—Identifying label held subject of protection against imitation.**

   Where a label was adopted by a manufacturer of cans to identify cans on which it is used as his product, the fact that it also identifies the contents of the can does not bar him from relief against unfair competition by a competitor by using imitations of his label.

In Equity. Suit by Cæsare Marcucci, doing business as the National Tin Can Manufacturing, against the United Can Company, Inc. On motion for preliminary injunction. Granted.

Fritz Ziegler, Jr., of New York City, for plaintiff.
Harry Aaron, of New York City, for defendant.

GARVIN, District Judge. Plaintiff moved for a preliminary injunction in this action, enjoining defendant from committing acts of unfair competition. The motion was argued and briefs were to be submitted September 28, 1921. None were received by me on that day, and after examining the papers I directed that a preliminary injunction issue. It now appears that the briefs and an additional affidavit were actually filed with the clerk of the court on the day mentioned and were not transmitted to me forthwith. I shall therefore consider the matter anew, and as though no decision had been rendered.

[1] The plaintiff is a manufacturer of tin cans of various sorts,

---

and the greater part of his output is sold to olive oil and cotton seed oil dealers. He began business in 1909, and has been successful. His sales during the year 1920 exceeded 2,000,000 cans. In 1912 he placed upon the market an olive oil can and a cotton seed oil can, with a distinctive label by which his cans could be easily identified by the trade, and has continued to sell cans bearing these labels, with an increasing demand therefor, until his sales were upwards of 35,000 per month. During this period he has been spending large sums in advertising cans bearing the label in question. The defendant was incorporated in 1920, and in April, 1921, placed upon the market tin cans bearing labels which are practical reproductions, and intended to be such, of those which have been characteristic of plaintiff's cans. Defendant alleges that in November, 1886, one Gounelle registered a trade-mark in the United States Patent Office, which was used by him in his business as a dealer in oils, and which was similar to plaintiff's; but, however this may be, it is equally clear that there is nothing to indicate that, when plaintiff began to employ the labels, the Gounelle labels were in use. Indeed, the contrary appears. Defendant also alleges that a label similar to that of plaintiff was registered in the United States Patent Office in 1908 by one Macaluso. But again there is nothing to indicate that this was in use when plaintiff's label appeared. It appears, also, that one Bellatoni has a label similar to plaintiff's; but there is no proof that it has ever been in use since plaintiff's label was put upon the market. A label now in use by Cordiano Bros. is no defense, since plaintiff admits the similarity and avers an intention to take legal proceedings forthwith to prevent further infringement by the user thereof. There is no proof that this latter label was in use when plaintiff's label was adopted.

[2] While plaintiff might not be entitled to the exclusive use of a trade-mark for his cans, when the trade-mark necessarily, from its nature, distinguished the contents, rather than the cans themselves, yet when the label also identifies plaintiff as the maker of cans bearing the labels, he should not be denied relief merely for the reason that the label happens to serve a double purpose. The fact that the label indicates to the using public that the cans contain a certain quality of oil is not controlling. Very much the same question was involved in the case of International News Service v. Associated Press, 248 U. S. 215, 39 Sup. Ct. 68, 63 L. Ed. 211, 2 A. L. R. 293, in which the court said:

"The parties are competitors in this field; and, on fundamental principles, applicable here as elsewhere, when the rights or privileges of the one are liable to conflict with those of the other, each party is under a duty so to conduct its own business as not unnecessarily or unfairly to injure that of the other. * * * The question here is not so much the rights of either party as against the public, but their rights as between themselves. And although we may and do assume that neither party has any remaining property interest as against the public in uncopyrighted news matter after the moment of its first publication, it by no means follows that there is no remaining property interest in it as between themselves. * * * Regarding the news, therefore, as but the material out of which both parties are seeking to make profits at the same time and in the same field, we hardly can fail to recognize that for this purpose, and as between them, it must be regarded as quasi property, irrespective of the rights of either as against the public.

\* \* \* The right of the purchaser of a single newspaper to spread knowledge of its contents gratuitously, for any legitimate purpose not unreasonably interfering with complainant's rights to make merchandise of it, may be admitted; but to transmit that news for commercial use, in competition with complainant—which is what the defendant has done and seeks to justify—is a very different matter. In doing this defendant, by its very act, admits that it is taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill, and money, and which is salable by complainant for money, and that defendant in appropriating it and selling it as its own is endeavoring to reap where it has not sown. \* \* \* The transaction speaks for itself, and a court of equity ought not to hesitate long in characterizing it as unfair competition in business."

See, also, Bayer & Co. v. United Drug Co. (D. C.) 272 Fed. 505, in which the court recognizes the difference between two classes—in that case, one representing manufacturing chemists, retail druggists, and physicians; the other, the consuming public—and granted a limited injunction.

A careful examination of the motion papers and of all the authorities to which I have been referred has not altered the conclusion at which I originally arrived.

Motion granted. Settle order, and fix amount of bond on notice.