## GUGGENHEIM v. CANTRELL & COCHRANE, Limited.

(Court of Appeals of District of Columbia. Submitted November 5, 1925. Decided January 4, 1926.)

No. 4260.

1. **Trade-marks and trade-names and unfair competition** ⟊70(2), 89—"G & G" trade-mark for ginger ale held to infringe established mark "C & C."

Trade-mark "G & G" for ginger ale *held* to infringe mark "C & C," and one furnishing dealers with goods bearing such mark was liable for unfair competition, if those distributing and selling his product deceived public through means which he supplied.

2. **Trade-marks and trade-names and unfair competition** ⟊70(1)—Rule affecting examination of similar marks stated.

When simulation of a well-known trade-mark is apparent, two marks should not be examined too closely to detect minute differences, but should be considered as a whole, with a view to points of similarity rather than points of difference.

Appeal from the Supreme Court of the District of Columbia.

Suit by Cantrell & Cochrane, Limited, against Herbert Guggenheim, doing business under the name and style of "G & G Bottling Company," also under the name and style "Christo Bottling Company." Decree for plaintiff, and defendant appeals. Affirmed.

A. L. Newmeyer, M. W. King, and E. C. Brandenburg, all of Washington, D. C., for appellant.

O. W. Jeffery, of New York City, and C. L. Sturtevant, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District of Columbia for the plaintiff, appellee here, in a suit to prevent infringement of the trade-mark "C & C" and unfair competition in connection with the sale of the ginger ale on which the trade-mark is used.

The record discloses that for almost half a century plaintiff's ginger ale had been widely and favorably known in the United States as "C & C," and that long prior to the entry of the defendant into the field the mark had been registered and used in the extensive advertising and selling of this ginger ale; sales amounting to 300,000 dozens of bottles per year. Witnesses for both plaintiff and defendant testified as to the excellence and popularity of this product.

The defendant formerly was a wholesale liquor dealer, first under the name of "Phœnix Liquor Company, Herbert Guggenheim, Proprietor," and later under the name of Guggenheim Distributing Company. In 1917 he began the manufacture of ginger ale, having as a partner a Mr. Gunst, who retired in a little less than two years, when defendant's brother, Sidney Guggenheim, took over the work formerly done by Mr. Gunst. On this point the defendant testified that "he personally owns the machinery in the plant that manufactures his ginger ale. He pays his brother as much salary as he needs it. It is paid to him as salary. 'With my brother the business is mine.'"

At first defendant conducted his ginger ale business exclusively under the name of Christo Bottling Company. He testified that "the prominent name of his business in 1917 and 1918 was the Christo Bottling Company"; that "he began to use the G & G bottle about 1918 or 1919." From that time he manufactured and sold both Christo ginger ale and the G & G brand. He widely advertised the G & G brand, or caused it to be so advertised, but under the name of the G & G Bottling Company, and never under the name of Guggenheim & Gunst. Although all other witnesses were familiar with the C & C brand, defendant disclaimed any knowledge of it at the time he adopted G & G as his mark. He was asked why he could not sell the G & G ginger ale under the name of the Christo Bottling Company, and replied: "Well, we prefer to have a distinctive name for it."

Several employees of local hotels and restaurants testified for the defendant to the effect that there had been no confusion in the sale of the C & C and G & G brands of

ginger ale in their places of business. The manager of the United States Senate restaurant, testifying for the defendant, stated that C & C was generally known as an imported ginger ale, and that waiters in his restaurant were instructed "to call for the imported ginger ale to avoid mistakes"; that he had known of C & C ginger ale for approximately 25 years and that "it is one of the very best known and has a high reputation." Another witness for the defendant testified on cross-examination in part as follows: "When people ask for defendant's product, they usually say 'G & G.' I never could see any similarity between 'G & G' and 'C & C.' There is a similarity in the sound of the 'e,' but the public gives the G & G entirely different from the C & C; rarely a mistake occurs in that." It further appeared from the testimony for the defendant that the G & G brand sells for about half the price of C & C.

[1] Under the view we take of the case, it is unnecessary to review the evidence further. In Bourjois & Co. v. Katzel, 260 U. S. 689, 692, 43 S. Ct. 244, 245 (67 L. Ed. 464, 26 A. L. R. 567), a trade-mark infringement case, the court, after speaking of a patent monopoly, said: "The monopoly in that case is more extensive, but we see no sufficient reason for holding that the monopoly of a trade-mark, so far as it goes, is less complete. It deals with a delicate matter, that may be of great value, but that easily is destroyed, and therefore should be protected with corresponding care."

[2] In this court, it has been repeatedly declared that there is neither legal nor moral excuse for even an approximate simulation of a well-known mark applied to goods of the same descriptive properties, and that, when an attempt to effect such simulation becomes apparent, the two marks should not be examined with a microscope to detect minute differences, but, on the contrary, should be viewed as a whole, as the general public would view them; in other words, that the points of similarity are of greater importance than the points of difference. Kaut-Reith Shoe Co. v. International Shoe Co., 45 App. D. C. 545; O. & W. Thum Co. v. Dickinson, 46 App. D. C. 306; Thomas Mfg. Co. v. Aeolian Co., 47 App. D. C. 376; Waltke v. Schafer, 49 App. D. C. 254, 263 F. 650; Coca-Cola Co. v. Chero-Cola Co., 51 App. D. C. 27, 273 F. 755.

In the case last cited we said: "To require that the line which separates marks should be well defined is not to ask too much, since the field from which a person may select a mark is almost limitless. * * * Of course, if the two marks were placed together, or if a person's attention was in some way directed to them, there would be no difficulty in apprehending the difference between them. This, however, is not the way to make the test. Ordinarily the prospective purchaser does not carry more than a faint impression of the mark he is looking for. If the article offered to him bears a mark having any resemblance to the one he is thinking of he is likely to accept it. He acts quickly. He is governed by a general glance. The law does not require more of him." The court therefore ruled that the use of "Chero-Cola" as a trade-mark would be likely to confuse purchasers desiring Coca-Cola.

In Procter & Gamble Co. v. Eney Shortening Co., 50 App. D. C. 42, 267 F. 344, this court ruled that the use of "Esco" would be likely to cause confusion with goods sold under the mark "Crisco."

In Coca-Cola Co. v. Koke Co., 254 U. S. 143, 41 S. Ct. 113, 65 L. Ed. 189, where the plaintiff's mark was "Coca-Cola," it was held that "the word 'Koke' was chosen for the purpose of reaping the benefit of the advertising done by the plaintiff, and of selling the imitation as and for the plaintiff's goods"; in other words, that the use of the word "Koke" constituted infringement and unfair competition.

In Coca-Cola Co. v. Old Dominion Beverage Corporation, 271 F. 600, the Circuit Court of Appeals for the Fourth Circuit ruled that "Taka-Kola" infringed "Coca-Cola," saying: "May defendant employ, for the sole purpose of bringing its wares speedily and cheaply into notice, a variant of plaintiff's trade-mark so close as to suggest the latter to every one, thereby turning to its own profit the reputation which the plaintiff has built up through many years of skill and effort, and at the cost of millions expended in advertising its goods under its mark? It may tell the thirsty that its drink is not only as good as Coca-Cola, but that it believes it to be in fact the same thing; but can it do so by using plaintiff's trade-mark to plaintiff's hurt? Even if there is no attempt by defendant to palm off its goods as those of plaintiff, does it necessarily follow that defendant is not unfairly competing? The right to equitable relief is not confined to cases in which one man is selling his goods as those of another."

In Gehl v. Hebe Co. (C. C. A.) 276 F. 271, it was held that the use of the name

"Meje" in trade infringed the trade-name "Hebe," when applied to the same article, and that proof of confusion was unnecessary where names suggested it. In that case there was no evidence of unfair competition and trade practice, "beyond the mere fact of the resemblance of the two names." The court said: "A question of similarity of trade-names as applied to a particular product must of necessity be largely a matter of impression. From absolute copy of a name to one which is radically and essentially different there are names innumerable, with varying degrees and shades of difference, and it would be impossible to lay down any general line of cleavage between infringing and non-infringing names. While the mind may readily conceive many names other than this which would more nearly approximate that of 'Hebe,' we are of the impression that 'Meje,' as applied to the same product, is an approximation sufficiently close to be deemed an infringement. The two vowels are the same in both, and most persons would pronounce both of these long, accenting the first syllable of each word. The interest of the average consumer in either of the brands is probably not such that he would charge his mind with the precise form and sound of the word. The general form and sound of the words, having marked similarity, would strongly suggest the likelihood of confusion. Although there was here no evidence of actual confusion on the part of customers, this is not easily available, nor indeed necessary, where the words themselves suggest it."

In S. S. Kresge Co. v. Champion Spark Plug Co., 3 F.(2d) 415, which involved the question of unfair competition, and where, as here, there was evidence that representatives of the plaintiff had received one thing when asking for another, the Circuit Court of Appeals for the Sixth Circuit said: "The fact that the purchaser under such circumstances was not deceived has no tendency to indicate that such would not have been the effect upon the ordinary and casual buyer, who is to be reckoned with."

10 F.(2d)—57

The decisions to which we have referred are decisive of the issue here, and clearly justify the decree below. The contention of the defendant that it was his right to use the initials of members of the original firm of Guggenheim & Gunst is without merit. In rejecting such a contention, the Supreme Judicial Court of Massachusetts, in W. B. Mfg. Co. v. Rubenstein, 236 Mass. 215, 128 N. E. 21, 11 A. L. R. 1283, said: "It is enough to say that this contention has no foundation either in fact or in law. Initials alone do not constitute the name. Description or abbreviation is not the equivalent of a name. The distinctive characterization in words by which one is known and distinguished from others is the name of a person. * * * The single question in this connection is whether the trade designation adopted by them [defendants] is sufficiently similar to that of the plaintiff to be likely to confuse or mislead those using ordinary discrimination."

In much of the advertising of the G & G brand, block type was employed, and defendant used that type on some of his container cases. That he either personally directed the advertising, or, knowing of it, failed to suggest any change, is clear from the record. At all events, having furnished dealers with goods bearing a mark so closely approximating a well-known mark of another dealer, defendant is liable for unfair competition, if those who distribute and sell his product deceive the public through the means which he has supplied. Warner & Co. v. Lilly & Co., 265 U. S. 526, 530, 44 S. Ct. 615, 68 L. Ed. 1161; S. S. Kresge Co. v. Champion Spark Plug Co. (C. C. A.) 3 F. (2d) 415; Fairbank v. Bell, 77 F. 869, 876, 23 C. C. A. 554.

G & G more nearly approximates C & C, both in appearance and sound, than any other two letters, and their continued use inevitably would result in the reaping by the defendant of the benefits incident to the long established and widely advertised business of the plaintiff. The decree is affirmed, with costs.

Affirmed.