## ROTEX SURGICAL APPLIANCE CO. v. KOTEX CO.

### Patent Appeal No. 2531.

Court of Customs and Patent Appeals.
Dec. 1, 1930.

Barthel & Barthel, of Detroit, Mich. (Otto F. Barthel, of Detroit, Mich., and Theo. K. Bryant, of Washington, D. C., of counsel), for appellant.

Fisher, Clapp, Soans & Pond, of Chicago, Ill. (Browne & Phelps, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant seeks to register, as a trademark for use on certain antiseptic powders, a composite mark "comprising a rectangular blue background on which appears a circular

red portion across which is the notation 'Rotex,' a stem and an arrow head at its end, being shown extended to one side and downwardly from the red disk."

There appear at different places on one of the specimens filed the statements, "A Boon to Womanhood," "For Irritation," "For All Odors," "For Leucorrhea"; the arrow of the mark pointing to these notations.

On another specimen appear other statements purporting to give the uses for which the article is designed; there being simply a different form of the above-quoted phrases.

It is made manifest that appellant's article is for use by women.

Appellee, pleading its registration of the word "Kotex," used upon sanitary napkins, opposes the application, on the ground that the marks are similar and that the goods are of the same descriptive properties, so that applicant's use of its claimed mark would be likely to lead to confusion or deceive purchasers, to the damage of opposer.

The Examiner of Interferences dismissed the opposition and held applicant to be entitled to the registration sought.

Upon appeal to the Commissioner of Patents, the decision of the Examiner was reversed, and registration denied. The applicant then appealed to this court.

In his opinion, the Commissioner said:

"The opposer has taken testimony but the applicant has not. It satisfactorily appears that the opposer was long prior in the field with the adoption and use of its mark upon its particular goods. It is shown that the opposer spent enormous sums, $2,000,000 in 1927 and $1,500,000 in 1926 and a like sum in 1925 in advertising its business and that its sales have reached the very great sums of $1,000,000 in 1923, $2,000,000 in 1924, $5,-000,000 in 1925, $8,000,000 in 1926 and, it is testified, about $11,000,000 in 1927. It is evident, in consequence, the opposer is in possession of a very valuable good will as an asset to its business. Under these circumstances, it is plain the applicant should have selected a mark which would, beyond reasonable doubt, bring about no confusion of origin of goods.

"The opposer's catamenial bandages are stated to be made up of cellutextile material and between the layers there is placed, or within the meshes incorporated, a quantity of deodorant powder, in the process of manufacture. There is also testimony that antiseptic or deodorant powders are used by women in connection with sanitary or other napkins of this kind for the same purpose that the antiseptic or deodorant powder is incorporated in the opposer's sanitary bandages. It seems proper to hold, therefore, that the goods of the opposer includes as one of its constituents or elements an antiseptic powder which may well be the particular kind of antiseptic powder to which the applicant applies its mark. The specimens of the use of the applicant's mark indicates clearly enough that its antiseptic powder is of a character that is used by the users of the opposer's goods and for the same purpose that the antiseptic powder is incorporated in the opposer's catamenial bandages.

"While the applicant's mark is not wholly identical with that of the opposer and the significance of the former is different from that of the opposer's mark yet in connection with the goods upon which the applicant uses its mark there is no suggestion or significance at all. It is true the applicant's goods would be sold in smaller containers and for a much higher price as to the size of the package as compared with the goods of the opposer yet it is believed the applicant should have selected a term which does not approach so closely to the mark of the opposer. As has so frequently been noted in previously adjudicated cases, the applicant had an unlimited field from which to choose its mark and there would appear to be no excuse for so closely approaching the mark of the opposer. If there is doubt, and it would appear that this is the fact, it must be resolved against the newcomer. William Waltke & Co. v. Geo. H. Schafer & Co., 273 O. G. 630, 49 App. D. C. 254, 263 F. 650; Kaut-Reith Shoe Company v. International Shoe Company, 239 O. G. 939, 45 App. D. C. 545."

We agree with the conclusion reached by the Commissioner, and see no occasion for attempting any addition to the reasons so succinctly and clearly stated by him as quoted, supra.

The decision of the Commissioner is affirmed.

Affirmed.