## HELEN SCHY–MAN–SKI & SONS v. S. S. S. CO.

### Patent Appeal No. 3351.

Court of Customs and Patent Appeals.
Dec. 3, 1934.

Harry H. Hitzeman, of Chicago, Ill., for appellant.

C. L. Parker, of Washington, D. C. (Arthur G. Powell, of Atlanta, Ga., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant, a corporation doing business as S-M-S Herb-Nu Remedies, of Chicago, Ill., filed its two applications in the United States Patent Office for registration of certain trade-marks for a general tonic. These applications were each filed on May 30, 1930. Thereupon the appellee, S. S. S. Company, a corporation existing under and by virtue of the laws of the state of Georgia, and having its residence in the city of Atlanta, in said state, gave notice of opposition to both attempted registrations, alleging the continuous use of, first, the letter "S," and thereafter the letters "S S S," as trade-marks, for over fifty years, and from a period prior to the year 1879, upon a medical preparation or remedy for the cure of blood and skin diseases, and for purifying the blood. The opposer alleged that the goods of opposer and the appellant were of the same descriptive properties, and that the use of appellant's marks, which it here proposes to register, would be likely to cause confusion in trade and deception of the public to the damage and injury of the opposer. Testimony was taken by both parties.

The marks proposed to be registered by the appellant are properly described by the Examiner of Interferences as follows:

"The drawing of application serial number 301,763, discloses a mark consisting of the relatively large letters 'S. M. S.' displayed within concentric circles divided by radial lines intersecting at right angles. The disclaimed words 'Spring,' 'Summer,' 'Autumn' and 'Winter,' 'for All Year Round Use' appear in association with the features described.

"Application serial number 301,764, discloses a mark consisting of the same letters, 'S. M. S.,' displayed against a background simulating a keystone."

The dominating portions of the marks of appellant and appellee are "S·M·S" and "S. S. S."

The two oppositions were consolidated by the Examiner of Interferences, and have both been disposed of at the same time by the tribunals of the Patent Office, and will be so disposed of here.

As a result of the consideration of the record, the Examiner of Interferences was of the opinion that confusion would be likely to result from the registration of the proposed trade-marks and sustained the oppositions. On appeal, the commissioner affirmed the decision of the Examiner of Interferences. Before the commissioner, the point seems to have been presented by the applicant that the opposer did not come into court with clean hands, alleging a misrepresentation by the opposer of the properties of its remedy. As to this, the commissioner was of the opinion that even if the commissioner had jurisdiction of such subject-matter, sufficient proof had not been offered in the record upon which any decision could be made.

The appellant has appealed to this court, contending in his brief that the commissioner was in error in finding that confusion was likely to result; that, as a matter of fact, no confusion had ever existed; and that the opposer is not entitled to relief because it does not come with clean hands.

The facts of the case, as shown by the record, are, briefly, as follows:

In 1878 one C. T. Swift registered in the United States Patent Office a trade-mark consisting of a monogram composed of the letters "SSS" placed in the center of a circle, above which were ornamental scrolls on which were the words "Swift's Syphilitic Specific and Blood Purifier." It is admitted that, at that time, this remedy was used for the cure of certain blood and skin diseases, and that especially it was adopted and used for the treatment of syphilis. The business afterwards was conveyed through successive conveyances to the present corporation, known as the "S. S. S. Co.," which now manufactures the product by the same formula as that originally used by Swift. The record further shows that the mark first used was the letter "S," and various registrations through the years show first the letter "S" and then the three S's used as the continuous trade-mark for the business. Sometimes the "SSS" was written without periods, and at others "S. S. S.," which is and was the form used at the time notices of opposition were filed herein. The record shows that after the discovery of salvarsan or "606," and perhaps sooner because of prohibitive state laws, the remedy of the opposer was not advertised or recommended for the relief of venereal diseases. It is alleged by counsel for appellant that the opposer has, at various times, claimed its product to be a remedy for cancer. We find no such fact appearing in the record. As this statement repeatedly appears in appellant's brief, it seems proper for the court to suggest that this statement is made through unfamiliarity with the contents of the record.

On the part of the applicant, it appears from the record that its business originated in Mrs. Helen Schymanski, who resides at 1869 North Damen avenue, in Chicago, and who has been engaged in manufacturing a general tonic for approximately twenty-five years. At first she sold this tonic under the name "Wonderful Home Remedy," but, about 1925, she adopted as a trade-mark the letters "S·M·S." At the time of the taking of the testimony in this cause in 1932, she had several stores in the city of Chicago where she was selling this remedy. It was sold under the marks of "S·M·S" and the "Herb-Nu-Tonic." There is considerable testimony in the record to the effect that Mrs. Schymanski, together with her son, Dr. Peter B. Schyman, advertised this product very extensively by window displays, artificial figures, circulars, and otherwise. In addition, Mrs. Schymanski herself conducted one of these stores, and was very active in attempting to push the sale of the remedy. Very considerable sales of this medicine occurred. The sales of both the S. S. S. of the opposer, and the S·M·S of the applicant were, to a substantial extent, made among people of the more illiterate class. Especially was this true in the city of Chicago, where large sales were made, as the record shows, in parts of the city where such illiterate classes predominate.

On the part of the opposer it is shown that, on various occasions, substitutes were made of S·M·S for S. S. S. by druggists, and that the S·M·S was at times palmed off for S. S. S. In addition, it is shown that the selling price of the S·M·S to jobbers, retailers, and to the public, was much less than that of the S. S. S.

The applicant insists that the opposer has committed fraud upon the public in misrepresenting its remedy to be a specific for syphilis and for various other diseases. This question is not raised by the reasons for appeal and will not be considered.

It is shown that the S. S. S. Company has spent many millions in advertising, and has built up a very large business, amounting to sales of over $2,000,000 a year; that its business extends throughout the United States, and is one productive of extensive profits.

It seems quite evident that the tribunals in the Patent Office came to the proper conclusion about this matter. It is apparent that

if, in the same establishment, bottles of the S. S. S. preparation were placed side by side with goods of the same descriptive properties, as these are, in similarly shaped bottles marked "S·M·S," the opportunities for confusion are very great. Especially is this true among the illiterate and ignorant, and those who cannot be expected to exercise the same care and caution which might be exercised by those of another degree of information or intelligence. It is true that such confusion would not be so likely to exist in some localities, or with some classes of purchasers. However, it would exist to some extent in all localities.

Counsel for appellant cites, although no particular comment is made thereon, Dollfus-Mieg et Cie v. Richardson Silk Co., 55 App. D. C. 226, 4 F.(2d) 302, 303. In that case appellee sought to register the letters "R. M. C." as a trade mark for cotton thread and yarns. Appellant opposed, claiming the prior use of the trade-mark "D. M. C." upon goods of the same descriptive properties. The opposition was dismissed by the Patent Office, and such action was sustained by the Court of Appeals, the court holding that "no one has the right, by adopting a combination of figures or letters, to exclude others from the adoption and use of different combinations of either."

However, the court added: "Of course, the second combination may not so closely approximate the first in subject-matter and accessories as to lead to confusion." It seems quite evident that the court there intimated that it would, in a proper case of likelihood of confusion, sustain such an opposition. This is further evidenced in Guggenheim v. Cantrell et al., 56 App. D. C. 100, 10 F.(2d) 895, in an infringement suit, where the same court, speaking through the same judge, affirmed a decree of the lower court enjoining the further use of the trade-mark and name "G & G" upon ginger ale, upon the bill of a prior user of the trade-mark "C & C," upon the same product.

Other federal courts have had similar views. See Godillot v. American Grocery Co. (C. C.) 71 F. 873, where the mark "A. G." was held infringed by the use of "A. G. Co."; American Tin Plate Co. v. Licking, etc., Co. (C. C.) 158 F. 690, where a mark consisting of the letters "M. F." in a monogram, inclosed in a circle, was held to be infringed by the use of the mark "M. F. H.," on identical goods; Smith & Wesson v. Galef (D. C.) 292 F. 314, where the mark "ST. W.," in connection with firearms and ammunition, was held

to be an infringement of the mark "S. & W."; Omo Mfg. Co. v. Mystic Rubber Co. (D. C.) 225 F. 92, where the mark "oMo" on dress shields was held to be infringed by the mark "DMD"

In the Patent Office practice, if letters, or combinations thereof, used as trade-marks, are so alike that their concurrent use upon goods of the same descriptive properties is thought to be likely to cause confusion in the minds of purchasers, the office has not failed to sustain the oppositions thereto. Craver's Sons v. Conklin & Son, 1 T. M. Rep. 135; Ex parte Ray, 5 T. M. Rep. 114; Keys Piston Ring Co. v. Metal Prod. Co., 8 T. M. Rep. 465; Goldman & Bros. v. Goldstein, 125 Misc. 737, 211 N. Y. S. 872, 15 T. M. Rep. 540.

The decision of the Commissioner of Patents is affirmed.

Affirmed.