## VICK CHEMICAL CO. v. CENTRAL CITY CHEMICAL CO.

**Patent Appeal No. 3393.**

Court of Customs and Patent Appeals.
Feb. 25, 1935.

Edward S. Rogers, of Chicago, Ill., James F. Hoge, of New York City, and Francis L. Browne, Dudley Browne, and Thomas L. Mead, Jr., all of Washington, D. C., for appellant.

Warren C. Horton, of Chicago, Ill., James H. Littlehales, of Washington, D. C., and Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in a trade-mark opposition proceeding wherein the Commissioner of Patents affirmed a decision of the Examiner of Trade-Mark Interferences dismissing the opposition of appellant and adjudging that appellee is entitled to the registration applied for by it.

On October 21, 1931, appellee filed an application for the registration of a composite trade-mark comprising a lattice like background upon which appears the notation "Lix." Upon the mark there also appears the following words:

Kills
Flies and
Mosquitoes
also
Roaches—Moths—Bedbugs
Ants—Fleas and Gnats
(Active Ingredients 100%)
Central City
Chemical Company
Chicago, Ill.
Large
Size

The exclusive use of such last-quoted words apart from the mark shown is disclaimed. The mark for which exclusive rights are claimed consists of the notation "Lix" upon a lattice like background. The application declares that the mark was adopted and is used for insecticide, and that it has been so used and applied since February 28, 1931.

In January, 1932, appellant filed a notice of opposition alleging that since long prior to October 21, 1931, it had used as a trade-mark for pharmaceutical prepara-

tions, namely, medicated salve, nose and throat drops, medicated cough drops, and liver pills, the word "Vick's," and that it had registered such mark on November 19, 1918, Registration No. 123,667. A copy of such registration appears in the record. Said notice of opposition further alleged that appellant's mark "Lix" was confusingly similar to appellant's mark "Vick's"; that the goods to which the respective marks are applied are of the same descriptive properties; and that registration of appellant's mark would be injurious to opposer, appellant here.

On April 25, 1932, appellee moved to dismiss said opposition upon the ground that the notice of opposition failed to state any grounds for denial of appellee's application. This motion was denied by the Examiner, and on November 7, 1932, appellee filed its answer to the notice of opposition, denying that the goods to which the respective marks are applied are of the same descriptive properties, that there was confusing similarity between the marks, and that the opposer would be damaged by the registration of appellee's mark.

Appellant took testimony; appellee did not.

The Examiner of Trade-Mark Interferences held that the goods to which the respective marks are applied were not of the same descriptive properties, and, further, that confusion was not likely by the use of said marks on the goods to which they are applied.

The Commissioner of Patents in his decision stated: "* * * There is no showing that opposer ever intended or represented to purchasers that its goods were or could be used as insecticides. The opposer's goods, intended as they are for use by direct external application to the body of human beings or, as to the liver pills, internal use, are not deemed to belong to the same class as this term can be reasonably or is authoritatively defined to which the applicant's goods belong. The respective goods are wholly dissimilar in appearance, in purpose, function, operation, and would seem to necessarily therefore possess different descriptive properties to such an extent that confusion would be almost impossible."

We are not in accord with the views of the Patent Office tribunals that the goods to which the respective marks are applied are not of the same descriptive properties. The goods upon which appellant uses its mark are medicinal preparations. In the case of United States v. Wm. Cooper & Nephews, Inc., 22 C. C. P. A. (Customs) ——, T. D. 47038, we held that the term "insecticide" may include medicinal preparations. We think it apparent from the record that the goods of the respective parties are sold largely in the same stores, and to a large extent purchasers of insecticides would also naturally be purchasers of the goods upon which appellant uses its mark.

We think that, under the decisions of this court, the goods to which the respective marks are applied are of the same descriptive properties. Cheek-Neal Coffee Co., etc. v. Hal Dick Manufacturing Co., 40 F.(2d) 106, 17 C. C. P. A. (Patents) 1103; B. F. Goodrich Co. v. Clive E. Hockmeyer et al., 40 F.(2d) 99, 17 C. C. P. A. (Patents) 1068; California Canneries Co. v. Bear Glacé Co., 44 F.(2d) 866, 18 C. C. P. A. (Patents) 732; Blackstone Products Co., Inc., v. Green Brothers Co., 70 F.(2d) 271, 21 C. C. P. A. (Patents) 1065; Noll v. Krembs, 73 F.(2d) 491, 22 C. C. P. A. (Patents) ——.

However, where the marks are not the same, and the goods to which they are applied are different in kind, although in a legal sense possessing the same descriptive properties, the question still remains whether appellee's mark "Lix," applied to insecticides, so nearly resembles appellant's mark "Vick's," applied to medicated salve, nose and throat drops, medicated cough drops, and liver pills, as to be likely to cause confusion and mistake in the minds of the public or to deceive purchasers.

In the case of California Packing Corporation v. Tillman & Bendel, Inc., 40 F.(2d) 108, 111, 17 C. C. P. A. (Patents) 1048, this court said: "* * * The right to register depends upon the distinguishing dissimilarity between the goods or the marks. The same degree of difference in the marks or goods or both must exist so as to *distinguish* the goods of the owner as is required to prevent the probability of 'confusion or mistake in the mind of the public,' etc. This *distinguishing difference* or *indistinguishable similarity* may rest not only in the 'essential characteristics' of the goods themselves with reference to their form, composition, texture, and quality, but may rest in the use to which they are put, the manner in which they are advertised, displayed, and sold, and probably other considerations. * * *"

In the case of Malone v. Horowitz, 41 F.(2d) 414, 415, 17 C. C. P. A. (Patents) 1252, there was involved the question of whether the mark "Molo," applied to mouth wash, breath purifier, throat gargle, and general antiseptic, was confusingly similar to the mark "Poro," applied to hair and toilet goods used in beauty culture. After holding that the goods to which the respective marks were applied were "merchandise of the same descriptive properties," we said: "The words 'Poro' and 'Molo' are quite similar in sound and appearance, and, if applied to goods which were identical, there would be no doubt but that confusion would result from the registration of both words as trade-marks. *The fact that the goods are not identical makes the issue before us a close one.* We think, however, that the use of the trade-mark 'Molo' in the manner heretofore set out would be likely to cause confusion or mistake in the mind of the public, and would be likely to deceive purchasers. At least there is a reasonable doubt as to whether such use would be free from such confusion, and under the well-settled trade-mark rule such doubt must be resolved against the newcomer. The newcomer has a wide choice from which to select, without entering the field of one whose business is well known and well established. Kassman & Kessner, Inc., v. Rosenberg Bros. Co., 56 App. D. C. 109, 10 F.(2d) 904." (Italics supplied.)

From the foregoing cited cases it appears that, even though the goods to which the respective marks are applied are of the same descriptive properties, nevertheless, in determining the question of confusion, consideration should be given to differences in the goods as well as to the differences in the marks.

Appellee's mark for which it seeks registration is applied to insecticides. An insecticide is defined in Funk & Wagnall's New Standard Dictionary as "One who or that which kills insects, as insect powder." Webster's New International Dictionary defines "insecticide" as (a) "An agent or preparation for destroying insects; an insect powder," and (b) "Killing of insects. *Rare.*"

Appellant's counsel calls our attention to the fact that the United States Insecticide Act of 1910, § 6, U. S. C., title 7, § 122 (7 USCA § 122), contains the following provision: "The term 'insecticide' *as used in this chapter* shall include any substance or mixture of substances intended to be used for preventing, destroying, repelling, or mitigating any insects which may infest vegetation, man or other animals, or households, or be present in any environment whatsoever. * * *" (Italics ours.)

It is sufficient to say, with respect to said legislation, that it does not purport to enlarge the common meaning of the term "insecticide" except for the purposes of that act, and that act has no relation to the proceedings here in question.

Moreover, the chief chemist for appellant testified in its behalf as follows:

"XQ. 4. You don't undertake to recommend it [Vick's VapoRub] as an insect exterminator? A. No.

"XQ. 5. You never undertake to advertise it or recommend it as an insecticide? A. No.

"XQ. 6. Is it not true, Mr. Black, that an insecticide is more or less an exterminator of insects and that would be its general use? A. Yes.

"XQ. 7. In your opinion would you say that any of the leading ingredients in Vick's VapoRub are leading ingredients in an insecticide? A. It would be my opinion that they would not in a true insecticide, that is a product which, as the name would imply, is designed to actually kill."

It appears from the testimony that at the time appellant's notice of opposition was filed it applied its trade-mark "Vick's" to four articles sold in the United States market, viz., Vick's VapoRub, Vick's Nose and Throat Drops, Vick's Cough Drops, and Vick's Little Laxative Pills; that all of said remedies except the pills were sold primarily for the cure or alleviation of colds, while Vick's Little Laxative Pills were sold for use as a laxative. It appears that Vick's VapoRub is in the form of a salve, and in the folder accompanying the package in which it is sold the salve is recommended for a number of uses other than the treatment of colds, among them being relief from insect bites and stings. It also appears from an advertisement of appellant introduced in evidence that the salve is recommended for vacation use as follows:

"Take the familiar blue jar on your vacation and try it for—

"Sunburn—Prevents and heals.

"Bruises—Sprains—Use like a liniment.

"Bites—Stings—Drives mosquitoes away, soothes bites."

**520**

However, the testimony upon behalf of appellant clearly establishes that said Vick's VapoRub is sold primarily for use as an external application for colds, and there is nothing in the record to indicate that appellant's mark "Vick's" is ever applied to an insecticide, but, on the contrary, the testimony shows that it is not so applied.

We are of the opinion that, taking into consideration the difference in the marks together with the difference in the goods to which the respective marks are applied, confusion in the mind of the public is not likely; and we do not think that purchasers would be likely to be deceived.

In the case of Malone v. Horowitz, supra, the goods there involved were much more closely related than are the goods in the case at bar. We there held that the mark "Molo," applied to mouth wash, breath purifier, etc., was confusingly similar to the mark "Poro," applied to hair and toilet goods used in beauty culture. We there said that the fact that the goods were not identical made the issue of confusion a close one. Were the goods here involved so closely related as were the goods in that case, we might come to the conclusion here that the use of the mark "Lix" would be likely to cause confusion or mistake in the mind of the public, and would be likely to deceive purchasers as to the origin of the goods; but we think that the goods to which the mark "Lix" is applied, while of the same descriptive properties as the goods to which the mark "Vick's" is applied, are so different in character and use that, considering the difference in the marks together with the difference in the goods, confusion would not be likely to occur.

For the reasons stated, the decision of the Commissioner of Patents is affirmed.

Affirmed.