23 C.C.P.A.(Patents)

## ELGIN AMERICAN MFG. CO. v. ELIZABETH ARDEN, Inc.

### Patent Appeal No. 3636.

Court of Customs and Patent Appeals.

June 1, 1936.

GARRETT, Associate Judge, dissenting.

Ephraim Banning, of Chicago, Ill., and Charles R. Allen, of Washington, D. C., for appellant.

Hugo Mock and Asher Blum, both of New York City, and James Atkins, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an opposition proceeding in which the Elgin American Manufacturing Company, hereinafter referred to as Elgin American, is the opposer, and Elizabeth Arden, Inc., hereinafter referred to as Elizabeth Arden, is the applicant.

The applicant seeks to register a trademark consisting of the letters "EA." The application, No. 337006, recites that the trade-mark has been used continuously since December, 1930, on bath salts, and since June, 1929, on rouge, sun-tan oil, talcum powder, and perfumes.

The opposer, Elgin American, in its notice of opposition, relies upon its trademark "EAM," registered in 1917, and has

alleged and shown, by stipulation, that prior to applicant's use of its said trade-mark as aforesaid it had been used by it on and in connection with lockets, cigarette cases, vanity cases, card cases, match safes, and powder boxes, produced both from precious metals and from base metals and various alloys of metals; rouge boxes, compact boxes, powder containers, make-up boxes, compacts for both loose and cake powder, cold cream containers, perfume containers, lipstick holders, eyebrow pencils, soap receptacles, and various toilet articles.

The two marks are here reproduced:

Mark of Appellant, Elgin
American Manufacturing Co.

Mark of Appellee,
Elizabeth Arden, Inc.

The stipulated record is very indefinite and confusing. The statement is made therein that Elgin American sells refills for its cases, boxes, containers, holders, and pencils. No allegation as to when they were sold or what trade-mark, if any, was used upon them is found in the record. Other allegations are equally indefinite. The record shows that appellant advertises that it sells refills for its rouge containers, and in the advertisements the rouge is shown placed in the rouge containers. We agree with the appellee and with the findings of the tribunals below that, as the issues are here presented, appellant's trade-mark must be regarded as having been used only on the goods above listed, in the penultimate paragraph, and that appellant's cases and other articles were made from both precious and base metals and various alloys of metals.

The applicant's stipulated facts contain the statement to the effect that its "EA" trade-mark is used on several kinds of containers, but the application at bar, No. 337006, does not so specify. So, the question here presented is whether the trademark "EA," when used on rouge, sun-tan oil, talcum powder, perfumes and bath salts, so nearly resembles appellant's "EAM" mark when used upon its goods above specified, which include powder boxes, rouge boxes, compact boxes, powder containers, perfume containers, and soap receptacles as to be likely to cause confusion within the meaning of the statute.

The Examiner of Interferences held that the opposer's metal products are not goods of the same descriptive properties as the toilet preparations in connection with which applicant uses the mark here sought to be registered, and dismissed the opposition.

Upon appeal, the Commissioner of Patents held that the marks involved lack of "deceptive similarity" and called attention to the plain printing of the mark "EAM" and the distinctive arrangement of the letters "EA." He also held that the goods to which the parties applied their respective marks were of different descriptive properties, and affirmed the decision of the Examiner of Interferences in dismissing the opposition.

Elgin American appealed here from the decision of the Commissioner. In the decision of the Commissioner is the following: "* * * It would require a very distorted meaning of terms to say that a cake of soap belongs to the same general class as a metal soap box, or that an ounce of perfume has characteristics in common with its ornamental container. Once that be held it would necessarily follow that barrels and beer are of the same descriptive properties; likewise bottles and pickles, crates and eggs, bags and flour, etc. I have found no case that goes to that length, and in the absence of a binding judicial pronouncement to the contrary my own opinion is that no such meaning can properly be read into the language of the statute."

We are not in agreement with the views of the Commissioner that appellant's powder boxes, and powder of the character sold by appellee, are not goods of the same descriptive properties or that the perfume containers sold by appellant are not of the same descriptive properties as the perfume sold by the appellee. The rouge and powder boxes, it seems to us, are of the same descriptive properties as the contents of such boxes.

The Commissioner stated that if it were held that perfumes and soaps were of the same descriptive properties as perfume containers and metal soap boxes, it would necessarily follow that barrels and beer were of the same descriptive properties. We do not mean to hold that every container is of the same descriptive properties as its contents. We would think, however, that considerable confusion might result from the manufacture of beer kegs selling them under the trade-mark "Budweiser" while the beer itself was also sold as "Bud-

weiser" beer by another. If the trade-mark "EAM" were placed on an ornamental perfume bottle, could there be any doubt that purchasers might assume that the bottle and the perfume had a common origin, or that the bottle contained an "EAM" perfume? [2, 3] The Trade-Mark Registration Act (15 U.S.C.A. § 81 et seq.) was designed to prevent confusion. The businesses of the parties hereto, obviously, either overlap or in their natural growth and extension will do so. If appellant does not sell refills for its compacts under its trade-mark "EAM," it certainly ought to have the right, being the owner of the mark, to do so without running afoul of confusion which would result from the registration of the mark of the appellee for the uses stated. Appellant's mark, from its long and extensive use, we assume, is a well-known mark. One of the most oft-repeated statements found in court decisions relating to trade-marks is that those who desire to distinguish their goods from the goods of another have a broad field from which to select a trade-mark for their wares. Equally well settled is the rule that doubts, if any, are resolved against the newcomer.

Our conclusion herein reached is amply supported by the decisions of this and other courts. In California Packing Corp. v. Tillman & Bendel, Inc., 40 F.(2d) 108, 17 C.C.P.A.(Patents) 1048; B. F. Goodrich Co. v. Clive E. Hockmeyer et al., 40 F.(2d) 99, 103, 17 C.C.P.A.(Patents) 1068, and in other cases, we have said that the term "merchandise of the same descriptive properties" in section 5 of the Trade-Mark Act of 1905, as amended (15 U.S.C.A. § 85), must be construed in the light of the term "goods of the same class" in the first part of the same section. In determining whether goods are of the same class or are of the same descriptive properties, we said in B. F. Goodrich Co. v. Clive E. Hockmeyer et al., supra: "And, of course, in this connection, the use, appearance, and structure of the articles, the similarity or the lack of similarity of the packages or containers in which, the place or places where, and the people to whom, they were sold should be considered."

It is conceded in the case at bar that the goods of both parties go to the same class of purchasers and are sold from the same kind of stores. Unquestionably, an article and a container which is specially designed to hold the article bear a close relationship to each other and are associated together by purchasers.

The goods being of the same descriptive properties, it remains to be determined whether or not the marks so nearly resemble each other as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers. Appellee has adopted the first two letters of appellant's mark, and the fact that they happen to be the initials of the first two words in the term "Elizabeth Arden, Inc.," though mentioned by appellee, has not been suggested by any one as being a material consideration.

In Crystal Corp., etc., v. Manhattan Chemical Mfg. Co., Inc., etc., 75 F.(2d) 506, 508, 22 C.C.P.A.(Patents) 1027, following other decisions, it was held that confusion was more likely to result from similarity in letter trade-marks than in other kinds. We there said: "We think it is well known that it is more difficult to remember a series of arbitrarily arranged letters than it is to remember figures, syllables, words, or phrases. The difficulty of remembering such lettered marks makes confusion between such marks, when similar, more likely."

There, we held that a "T. Z. L. B." mark was confusingly similar to a "Z. B. T." mark.

In A. F. Part, Inc., v. Sormani, 80 F. (2d) 78, 23 C.C.P.A.(Patents) ——, it was held that "OMY" was confusingly similar to a mark consisting of the same letters in combination with three human heads.

In Helen Schy-Man-Ski & Sons v. S. S. S. Co., 73 F.(2d) 624, 22 C.C.P.A.(Patents) 701, "S.S.S." was held confusingly similar to S·M·S.

In Guggenheim v. Cantrell & Cochrane, Limited, 56 App.D.C. 100, 10 F.(2d) 895, the Court of Appeals of the District of Columbia, in an infringement suit affirmed a decree of the lower court enjoining the further use of the trade-mark and name "G & G" upon ginger ale, upon the bill of a prior user of the trade-mark "C & C," upon the same product.

It was held in Cluett, Peabody & Co., Inc., v. Samuel Hartogensis, 41 F.(2d) 94, 17 C.C.P.A.(Patents) 1166, that substantially identical marks used on collar buttons, on the one hand, and collars on the other, were used on goods of the same descriptive properties and that the newcomer's mark should have been canceled.

In Noll v. Krembs, 73 F.(2d) 491, 22 C.C.P.A.(Patents) 722, a medicated textile used for the treatment of the hair. and scalp was held to be merchandise of the same descriptive properties as a preparation for coughs and colds.

In Rotex Surgical Appliance Co. v. Kotex Co., 44 F.(2d) 879, 18 C.C.P.A. (Patents) 746, an antiseptic powder for women, on the one hand, and sanitary napkins, on the other, were held to be goods of the same descriptive properties.

In Kotex Co. v. Clarence M. McArthur, 45 F.(2d) 256, 18 C.C.P.A.(Patents) 787, we held that there was a likelihood of confusion of origin in the use of the mark "Rotex" on vaginal syringes in view of the prior ownership and registration of the mark "Kotex" for sanitary napkins, the goods upon which the marks were used being of the same descriptive properties.

In Vick Chemical Co. v. Central City Chemical Co., 75 F.(2d) 517, 22 C.C.P.A. (Patents) 996, where the trade-marks "Lix" and "Vick's" were involved, it was held that an insecticide, upon which "Lix" was used, was merchandise of the same descriptive properties as pharmaceutical preparations, namely, medicated salve, nose and throat drops, medicated cough drops, and liver pills, upon which the mark "Vick's" was used.

In Malone v. Horowitz, 41 F.(2d) 414, 17 C.C.P.A.(Patents) 1252, we held that "Molo" and "Poro" were confusingly similar marks, "Molo" being applied to a mouthwash, breath purifier, throat gargle, and general antiseptic, and "Poro" being used on hair and toilet goods used in beauty culture, such as body deodorants, cold creams, vanishing creams, shampoos, temple growers, hair growers, etc., and that the marks were used by the parties on goods of the same descriptive properties.

In Eastman Photographic Materials Co. v. Kodak Cycle Co., 15 Reports Patent Cases 105, it was held by the English High Court of Justice, Chancery Division, in a much-cited decision, that confusion would result in the sale of bicycles under the term "Kodak" and the sale of cameras under the same name.

The Circuit Court of Appeals for the Third Circuit, in Wall v. Rolls-Royce of America, Inc., 4 F.(2d) 333, enjoined the use of the trade-mark "Rolls-Royce" on radio tubes on the ground that purchasers of the tubes might conclude that they orig-inated with the well-known Rolls-Royce manufacturers of automobiles, aeroplanes, and parts thereof.

In L. E. Waterman Co. v. Gordon, 72 F.(2d) 272, the Circuit Court of Appeals for the Second Circuit held that a trade-mark protects the owner against not only its use upon the articles to which he has applied it, but upon such other goods as might naturally be supposed to come from him, and that the owner of the trade-mark "Waterman's," registered for fountain pens, mechanical pencils, and similar writing instruments, was entitled to enjoin another from selling razor blades under the name "Waterman."

In Pro-phy-lac-tic Brush Co. v. Abraham & Straus (D.C.) 11 F.Supp. 660, 663, toothbrushes and tooth powder were held to be "so closely associated in the minds of the public that if they should bear the same name a consumer would be justified in concluding that they have the same origin." The court further said: "Toothbrushes and tooth powder go together. They are sold together. The evidence in this very case alone indicates clearly that this close relation exists between the two."

In Sun-Maid Raisin Growers of California v. American Grocer Company, 40 F.(2d) 116, 17 C.C.P.A.(Patents) 1034, flour, on the one hand, and raisins, syrup, and baking powder, on the other, were held to be goods of the same descriptive properties.

In Aunt Jemima Mills Co. v. Rigney & Co. (C.C.A.) 247 F. 407, L.R.A.1918C, 1039, it was held that pancakes and syrup, used with said pancakes, were goods of the same descriptive properties. See, also, Marcucci v. United Can Co., Inc. (D.C.) 278 F. 741.

The above-cited authorities would seem to make it clear that rouge boxes and rouge, face powder boxes and face powder, and perfume bottles and perfume, when sold as is above stated, are all goods of the same descriptive properties, and that confusion would likely result as to their origin if identical or similar trade-marks were used as appellee suggests.

Appellee relies on the case of American Tobacco Co., Inc., v. Gordon, 56 App.D.C. 81, 10 F.(2d) 646. There, the Court of Appeals of the District of Columbia held cigarettes and cigarette holders not to be goods of the same descriptive properties. It is stated by appellee that this decision has never been reversed. We discussed

that case in California Packing Corp. v. Tillman & Bendel, supra. It is not in harmony with most of the decisions of that court, subsequently handed down, and it certainly is not in harmony with the decisions of this court.

It is our view that the goods are of the same descriptive properties, although there is a difference in them, and that the marks, although slightly different, bear sufficient similarity to each other, that confusion would result from their concurrent use on the goods of the respective parties.

See Elgin American Manufacturing Co. v. Elizabeth Arden, Inc., 83 F.(2d) 687, 23 C.C.P.A.(Patents) —, decided concurrently herewith.

The decision of the Commissioner of Patents is reversed.

Reversed.

GARRETT, Associate Judge (dissenting).

I think the decision of the Commissioner of Patents sustaining the decision of the Examiner of Interferences should be affirmed.

First, I agree with the Commissioner upon a point which the Examiner did not adjudicate; namely, the lack of deceptive similarity between the opposing marks. Since reproductions of the marks appear in the majority opinion and may be there seen, it is unnecessary here to describe them verbally, nor shall I dwell further upon this phase of the controversy.

Second, I am unable to concur in the holding that appellant's metal containers are of the same descriptive properties, or even of the same class, as appellee's rouge, sun-tan oil, talcum powder, perfumes and bath salts. It seems to me that a mere statement of what the goods of the respective parties are carries refutation of the idea that they are of the same descriptive properties.

The facts should be clearly understood. Upon the record in this case appellant's mark "EAM" may be taken as indicating origin with it of the *metal containers* which it manufactures and sells, but it does not indicate origin with appellant of the substances which at times it may put into those containers either before the containers are sold or for use as "refills," because it is not shown ever to have used the mark upon those substances. On the other hand, appellee's mark "EA" indicates origin with it of the substances described but not of the containers in which such substances are packed.

I agree that the record in the case is, as stated in the majority opinion, "very indefinite and confusing." It is greatly to be regretted that a decision, which I apprehend is to have far-reaching consequences as a precedent as well as affecting the rights of the immediate parties to the case, should have to be rendered upon such a record.

It may be added that, as pointed out in the decision of the Commissioner, the burden here rested upon the opposer (appellant) to show a state of facts justifying the opposition, and any doubt created by the record itself or by the absence from it of material evidence should be resolved against appellant.

Had appellant shown use of its mark on the substances with which its containers are filled or refilled, we should, of course, have an entirely different question, but no such showing was made, and the majority opinion does not so intimate. The majority decision rests squarely upon the finding that the containers and the substances which they contain are of the same descriptive properties.

To what ends the decision logically followed may lead in the administration of the Trade-Mark Registration Law I confess I am unable to foresee, and speculation concerning it is useless. I do not regard any of the authorities cited by the majority as being apposite, and I shall not attempt to review them in detail.

The case of B. F. Goodrich Co. v. Olive E. Hockmeyer et al., 40 F.(2d) 99, 17 C.C.P.A.(Patents) 1068, is cited, and from it is quoted a rule for guidance "In determining whether goods are of the same class or are of the same descriptive properties." I repeat the quotation: "And, of course, in this connection, the use, appearance, and structure of the articles, the similarity or the lack of similarity of the packages or containers in which, the place or places where, and the people to whom, they were sold should be considered."

Accepting the rule as sound, it does not seem to me to be applicable in the case at bar. Certainly, rouge, sun-tan oil, talcum powder, perfume, and bath salts can-

not be said to have the same use, appearance, or structure as metal receptacles in which they may be contained, and I am not able to see how a deduction of similarity properly may be drawn from the mere fact that sales of the respective articles, differing in such material respects, are made in the same establishment and often to the same purchasers or classes of purchasers.

Without discussing numerous of the other cited cases in detail, it seems sufficient to say that in none of them do I find any intimation that the *containers* of goods are of the same descriptive properties as the *goods* themselves.

Some of the cases cited are decisions of courts other than this court, involving the question of unfair competition, and do not seem to me to be pertinent to the facts of this case where our concern is limited to the statutory right of registration. It is scarcely necessary to say that almost any registered trade-mark could be used by its owner in such a manner as unfairly to compete with the business of another. In cases where marks are so used equity grants relief, but this does not affect the purely statutory right of registration. Broadly speaking, registration is one thing and use is another.

I deem it proper to refer specifically to the case of American Tobacco Co., Inc., v. Gordon, 56 App.D.C. 81, 10 F.(2d) 646, relied upon by appellee, in view of the expressions concerning it in the majority opinion. As I understand those expressions, the implication is that the decision in that case, in effect, has been overruled by subsequent decisions of this court. I had not so thought, but, assuming that it has been overruled, either directly or by implication, I still do not feel that such action should affect our decision here. Cigarettes and holders used in smoking them were there held not to be goods of the same descriptive properties. Conceding that there is such an association of cigarettes and cigarette holders *in actual use* as to justify a holding to the contrary, that does not seem to me to have any particular bearing upon the merits of this case.

In the expression "The Trade-Mark Registration Act (15 U.S.C.A. § 81 et seq.) was designed to prevent confusion," the majority opinion restates a thought often expressed by this court. I quite agree to its correctness when the expression is properly limited and applied, but I am unable to see where it has any application here. The expression "merchandise of the same descriptive properties" is inextricably interwoven with the matter of confusion by the language of the statute. Simply applying the same mark to different articles of merchandise wholly dissimilar in their nature, characteristics, appearance, and use does not render them of the same descriptive properties. That makes the mark the test of characteristics. I had supposed that to be determinable only from the per se nature of the articles.

It is said in the majority opinion: "The businesses of the parties hereto, obviously, either overlap or in their natural growth and extension will do so. If appellant does not sell refills for its compacts under its trade-mark 'EAM,' it certainly ought to have the right, being the owner of the mark, to do so without running afoul of confusion which would result from the registration of the mark of the appellee for the uses stated."

Authorities need not be cited to support the proposition that trade-marks are not owned as independent entities. They are owned only in connection with the articles to which they are applied. There is nothing in the record to show that appellant has ever applied "EAM" to rouge, sun-tan oil, talcum powder, perfumes, and bath salts.

It may be conceded that appellant has the right to enter the cosmetic field if it chooses so to do, and make and sell, or purchase from other manufacturers and sell, the articles in which appellee deals. So far as I know, it might go into the canning business or the wholesale grocery business with entire freedom and propriety, and so expand its activities, but such expansion of its business would not be that expansion which I understand to be comprehended within the decisions respecting the right to extend the use of a trade-mark to new articles dealt in or produced.

It seems to me that in expanding its business appellant must, so far as any trade-mark rights are concerned, do so in a manner consistent with the rights of appellee, and, even assuming the respective marks to be deceptively similar, as held by the majority, appellee's right to register "EA" for use upon the merchandise described is superior to appellant's rights in "EAM" for the same or similar merchandise, upon the showing made in this record. In extending its business to cosmetics, appel-

lant invaded the field of appellee, and of the two it was the later entrant into that field. Appellant is not entitled to be shielded from "running afoul of confusion" when it itself creates the confusion.