**MONTGOMERY WARD & CO., Inc., v. SEARS, ROEBUCK & CO.**

Patent Appeal No. 2703.

Court of Customs and Patent Appeals.
May 25, 1931.

Wm. Nevarre Cromwell, of Chicago, Ill., Earle D. Crammond, of Washington, D. C. (Charles B. Fullerton and James L. McManus, both of Chicago, Ill., of counsel), for appellant.

C. Paul Parker, of Chicago, Ill., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is a trade-mark registration interference proceeding in which Montgomery Ward & Co., Incorporated, has appealed

from a decision of the Commissioner of Patents, affirming a decision of the Examiner of Interferences awarding to Sears, Roebuck & Co. priority of use and right of registration of the word "Sta-Klean" for use on ammunition in Patent Office class 9, explosives, firearms, equipments, and projectiles, and denying to appellant right of registration of the word "Staclean" for use on the same type of goods.

The goods upon which the respective parties are using, and propose to use, the respective marks, are identical in character. The words are the same, except that appellee hyphenates its word and uses the capital letter "K" where appellant uses the small letter "c" in spelling "clean." Appellee also makes a somewhat fanciful arrangement of its word, while appellant uses plain letters, but this difference is not urged as having any bearing upon the issue. So the question in the case is that of which party first used the mark in the sense of the Trade Mark Registration Act of February 20, 1905 (15 USCA §§ 81–109).

The application of appellee for registration was filed in the Patent Office September 14, 1927, and alleged continuous use "since June 28, 1927." Appellant filed its application December 10, 1927, alleging use "since May 11, 1927."

The interference was declared January 13, 1928, and on April 18, 1928, appellee moved to amend by substituting March 2, 1927, for June 28, 1927, as its date of beginning use. Consideration of this motion was postponed by the Examiner of Interferences "until after the termination of this interference." We do not find in the subsequent decisions where either tribunal of the Patent Office formally passed upon the motion, but it seems to have been treated as granted, and, in the argument before us, appellant agrees that it should be so treated.

■ It is the contention of appellant, however, that upon the fact of the sale, claimed by appellee to have been made on March 2, 1927, the evidence is conflicting as to some details, and does not satisfactorily establish such a sale of goods bearing the mark as to give appellee ownership thereof in the sense of the Trade Mark Registration Law. Upon the fact of the sale, we have the concurring findings of both tribunals of the Patent Office, and the rule that this court will not disturb such findings unless convinced by the evidence that they are manifestly wrong is applicable.

■ We do not feel that these findings were erroneous. It appears that appellee, in the fall of 1926, or in January, 1927, began to consider the question of dealing in ammunition of a new type which would not foul the bore of the guns in which used, and that it took up the subject with the Western Cartridge Company, which furnished appellee's ammunition supplies; that in January, 1927, after considering different names for trademark use, "Sta-Klean" was decided upon; that on January 21, 1927, the supervisor of appellee's sporting goods department wrote the advertising department to take steps to register the mark, and that these steps were taken; that in February, 1927, drawings were made of the design for the mark, followed by photostatic copies of the drawings; and that plans were under way to have the goods listed, under the Sta-Klean mark or label, in the catalogue which was to be issued July 1, 1927, which plans were duly consummated.

It further appears that one Emil O. Strauss, a commercial artist in the employ of an engraving company which did work for both parties to this suit, learned in some way—we do not regard it as material just how—of appellee's ammunition to which the Sta-Klean mark was applied, or was to be applied, and under date of February 28, 1927, addressed a letter, which is in evidence, to the company placing an order for "two hundred rounds of Sta-Klean ammunition for a .22 short caliber rifle," and stated in his letter: "I am enclosing 70 cents. I do not know whether this is the right price, as I have no catalogue to order from."

The order was filled; the merchandise being shipped by express. The receipt of the express company is in the record, and along with it a statement showing that the price was 60 cents, and that there was due the purchaser a refund of 10 cents.

We see no reason, in the face of the testimony and the documentary evidence filed, to question the fact that the goods shipped were the goods ordered. The witness states that he received the goods in boxes labelled with a photostatic copy of the Sta-Klean design or mark, and that he used the goods, except perhaps some that were misplaced, for the purposes for which ordered.

Geo. L. Engelhard, an employee of appellee, testified that he personally looked after the filling of the Strauss order and attached the photostats to the packages. It is not deemed necessary to go into any elaborate review of the evidence in the case. Unless

both Strauss and Engelhard are to be wholly discredited and their testimony, as well as the documentary evidence, disregarded, we think the fact of the sale to Strauss is abundantly established.

Appellant insists, however, that, even if the sale to Strauss be conceded, it was not a sale of the type of ammunition upon which it was proposed to use the mark; that it was some other type which appellee had in stock at the time and upon which it placed the photostats. Appellee insists that the evidence shows that it was of the same type, and that, even if it were not, it would make no difference in law. Upon the latter contention of appellee we do not deem it necessary to pass, since we agree with the former. Engelhard's testimony, taken as a whole, is quite positive to the effect that the sale to Strauss consisted of an ammunition which had the noncorrosive powder of the type covered by appellee's Sta-Klean mark.

Without lengthening this opinion unduly by a minute analysis of the testimony, it is sufficient to say that, in our opinion, it establishes the sale to Strauss as being a bona fide sale of the type of the goods for use upon which the registration of appellee is sought, and that the packages contained the mark, applied in a manner which meets the requirement of the Trade Mark Registration Act as to fixing appellee's title thereto.

The sale to Strauss was an intrastate transaction. This was sufficient, when coupled with the further subsequent uses shown, to vest title in appellee or give to it the ownership of the mark, but registration could not be predicated upon this alone. Macaulay v. Malt-Diastase Co., 55 App. D. C. 277, 4 F. (2d) 944. In order to be entitled to register, the owner of a mark, by the terms of the statute, must have used same in interstate commerce.

Such interstate use by appellee is, we think, established by a sale and shipment to Dr. Maurice A. Marr, of Michigan City, Ind. Dr. Marr's order for "100 6K216 Staklean cartridges" was given in writing under date of June 27, 1927, accompanied by a check for 30 cents, and the goods ordered were received by him a few days thereafter, being shipped by express on June 28, 1927. Dr. Marr's testimony as to this transaction is supported by ample documentary evidence. Indeed, the occurrence of the transaction is not questioned by appellant, but it is insisted that it was not one which meets the Trade-Mark Registration Act requirement. It is pointed out that Dr. Marr, in fact, made the order at the solicitation of a member of the Sears, Roebuck & Co. concern; that he did not use the cartridges; and the contention is that the whole transaction was brought about in an effort to meet the interstate commerce requirement of the registration law, and appellant cites the case of Phillips v. Hudnut et al., 49 App. D. C. 247, 263 F. 643.

It does not seem to us that the instant case is on all fours with the last-named case. The facts are different. There is no question of there having been a sale in the instant case. Dr. Marr ordered the cartridges and paid the regular price for them with his own money. It is not material how he used them, or whether he used them at all. It may be that the transaction was one brought about by appellee's desire to meet the requirements of the law, but this does not destroy its rights, if, in fact, it did meet these requirements.

The transaction with Dr. Marr, on the part of appellee, is, at least, in quite as favorable a situation legally as is that of appellant with Anderson and Cameron, wherein appellant, in response to an order for one kind of cartridges, substituted and shipped to Anderson others bearing the "Staclean" label. The circumstances, we think, strongly indicate that the transaction of appellant was in order to make an interstate shipment of goods bearing its proposed mark.

It is upon this shipment that appellant relies to establish its date of May 11, 1927. The proof fails definitely to establish that its goods shipped were, in fact, accepted so as to make out a completed interstate commerce transaction, but, under our view of the case, we need not pass upon that question.

It is quite evident from the record that both parties to this proceeding, who are engaged in the mail order business upon a large scale, began to plan dealing in the type of ammunition containing a new kind of noncorrosive powder, shortly after that type became known, and by a coincidence, of which there is no explanation in the record, both chose practically the same word for a trademark. There is no allegation or intimation of fraud or deceit and counsel for each party appears to be of the opinion that neither principal knew what the other was planning relative to the trade-mark until the appearance of their respective catalogues, about July 1, 1927.

Upon the record in the case, we think the decision of the Commissioner of Patents was without error, and same is affirmed.

Affirmed.