38 C.C.P.A. (Patents)

## TURCO PRODUCTS, Inc. v. TYKOR PRODUCTS, Inc.

Patent Appeal No. 5778.

United States Court of Customs and Patent Appeals.

Feb. 6, 1951.

Rehearing Denied March 30, 1951.

O'Connell, J., dissented.

Mason & Graham and Collins Mason, all of Los Angeles, Cal. (Donald A. Gardiner, Washington, D. C., of counsel), for appellant.

John A. Wortmann and Mansfield C. Fuldner, New York City (Harris D. Hineline, Brooklyn, N. Y., of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Commissioner of Patents, speaking through the Assistant Commissioner, reversing the decision of the Examiner of Trade-Mark Interferences (hereinafter referred to as the examiner) in a trade-mark opposition proceeding, 81 U.SPQ 548.

The mark which appellee seeks to register under the Trade-Mark Act of February 20, 1905, now 15 U.S.C.A. § 1051 et seq., for "insecticides, insect and stock sprays" is a composite mark which, as described by the Assistant Commissioner, "consists of the word 'Tykor,' which is displayed within a panel, above which appear[s] the representation of certain receptacles, apparently of the type used in chemical laboratories. All of these are inclosed within a circle."

Appellee's application was filed October 30, 1946, use being alleged therein since April 17, 1946.[1]

Paragraphs 1 and 2 of appellant's notice of opposition read:

"1. Long prior to any date of use alleged by said applicant and prior to April 17, 1946, opposer adopted and began using the trade mark Turco for abrasive and detergent cleaning compounds, and for insecticides, and continuously from said adoption has used said trade mark upon said goods in both interstate and intrastate commerce, and in foreign commerce, and opposer is still so using the said trade mark.

"2. Opposer has registered its said trade mark TURCO in the United States Patent Office, Certificates Nos. 270,966, dated May 20, 1930, and 281,541, dated March 24, 1931, for abrasive and detergent cleaning compounds, said trade marks and the registrations thereof now being the property of opposer and have been the property of opposer since said adoption."

It will be noted that the products for use upon which 270,966 was registered are "detergent cleaning compounds in flake, pulverized, and liquid form," and those named in 281,541 are *"abrasive* and detergent cleaning compounds in flake, pulverized, *paste,* and liquid form." The difference as to products may be discerned from the words which we have italicized.

The word "Turco" mentioned in paragraph 1, supra, as having been used as a trade-mark "for abrasive and detergent cleaning compounds, and for insecticides,"

concededly has never been registered. That word, standing alone, is alleged to have been *used* for insecticides, and evidence was introduced indicating use of the registered marks, particularly No. 281,-541, for insecticides.

The two registered marks are almost identical. No. 281,541 consists of the word "Turco" printed in somewhat unusual type. Immediately below the word is a representation of a man's head, the face heavily bearded, surmounted by a turban of the type commonly seen on pictures of male Turks. A representation of a scimitar, or Turkish sword, is shown at the left side of the head, its lower point directed toward the chin. The "T" in "Turco" is distorted or fashioned so that it has the appearance of a scimitar located on the right side of the figure with its points directed toward the head.

The type with which "Turco" is printed in No. 270,966, while fanciful, differs from that in registration No. 281,541, and the "T" is not fashioned to represent a scimitar. Otherwise, the two marks are identical. The exhibits introduced in evidence show No. 281,541 as being used most frequently.

■ It should be understood that there is no claim before us that cleaning compounds and insecticides are goods of the same descriptive properties, and the evidence of use of the marks on cleaning compounds is not deemed relevant to the issue before us, which is whether the concurrent use of the marks of the respective parties as trade-marks *for insecticides*

1. At the hearing of this case before the tribunals of the Patent Office appellee made a contention, which the Assistant Commissioner relates, together with his disposition of it, as follows: " * * * applicant contends that it is the owner of a prior registration of the mark 'Tykor' for a core binding compound, and that it and its parent company [The Borden Co.] have, for many years, been 'interested in' the sale of insecticides, and have participated in educational and developmental activities in their use in the dairy industry. The registration for a core binding compound is prior to opposer's first date of use, but the core bind-

ing compound is apparently, as found by the examiner of interferences, a chemical agent used primarily in foundries for the purpose of holding together the core elements of a mold during a casting operation. As such it appears to be so entirely different from the material here involved that it cannot be relied upon by applicant as carrying back its date of use nor can such registration or applicant's 'interest' in the insecticide field be considered pertinent to this proceeding in any way."

The question so disposed of was not brought before us for determination. The trade-mark was registered in 1921.

would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers.

The Assistant Commissioner stated:

"* * * The opposer [appellant here] has made of record certain registrations of its mark for abrasive and detergent cleaning compounds, and has satisfactorily proven use of its mark upon insecticides since a date prior to any use claimed by applicant. As presented in the registrations, and as displayed on nearly all of the specimens of record, opposer's word 'Turco' is displayed in association with a bearded and turbaned head which opposer's president described as a 'Turk's head' and a scimitar. In many of the specimens, the stem of the 'T' in 'Turco' is also extended in the form of the blade of the scimitar.

"No question is raised as to opposer's use of its mark on insecticides being prior to any use by applicant of its mark on insecticides, * * *."

It is not clear to us whether "mark" in the clause reading "has satisfactorily proven use of its mark upon insecticides since a date prior to any use claimed by applicant" refers to one of the marks registered for the cleaning compounds or to the admittedly unregistered word "Turco" standing alone.

We quote the following from the brief for appellee (omitting references to pages of the record as indicated by asterisks):

"By paragraph 2 of its notice * * * appellant specifically identifies its combination mark, described in the preceding one as Turco, by two pleaded registrations Nos. 270966 and 281541 * * *. Each registration covers the word Turco in close association with a bearded, turban covered head of a Turk and a sword identified by appellant's sole witness and president as a Turkish scimitar * * *.

"Appellant's combination mark is clearly and prominently displayed on all its many exhibits, with the exception of irrelevant Nos. 1, 38 and "A". Certain others show the word Turco in association with the entire pleaded and proven combination mark (Exhibits 24, 26, 33 and others), or the word Turco and the entire combination mark on different parts of the same exhibit item with equal prominence (Exhibits 10, 18, 27 and others). No specific use of the unpleaded single word Turco has been proven nor would it be relevant and appellant has not pleaded nor could it prove any United States Registration, in its name, covering such a mark for any goods."

It is our view that the reference in paragraph 1 of the notice is a sufficient pleading of use of the word "Turco" standing alone and that if such use were satisfactorily shown to have been a trade-mark use it might have some relevancy to the issue, although upon all the facts here appearing we would not regard it decisive.

■ We are of the opinion that the evidence, while meager, is sufficient to establish that appellant's *registered* marks, particularly No. 281,541 registered, March 24, 1931, for cleaning compounds, were used also for insecticides prior to April 17, 1946, the first date claimed by appellee for use of its composite mark on insecticide products, but we are not convinced that the evidence is sufficient to establish trademark use of the word "Turco," except in association with the other features of the registered marks hereinbefore described, for either cleaning compounds or insecticides.

The only witness testifying on behalf of appellant company was its president, Mr. Sydney Grant Thornbury. Through him some thirty-nine documentary exhibits were introduced in evidence and he gave testimony concerning quite a number of them. We have studied the exhibits and the testimony concerning them carefully. Exhibit 1, which purports to be a label showing the manner in which "Turco" unassociated with the other features hereinbefore described is used, is the only exhibit showing such use on insecticides, and such testimony as Mr. Thornbury gave concerning it does not convince us that it merits any serious consideration here.

The Assistant Commissioner states: "* * * Opposer's president testified that 'in almost all cases' opposer uses 'a

label which contains both elements,' the name, the Turk's head and scimitar, but that 'there are a few cases where only the word "Turco" appears without the Turk's head.'"

We may say that, except as to Exhibit 1, the merchandise covered by exhibits having the word "Turco" without the Turk's head consisted of cleaning compounds. Those are appellant's Exhibit 38 and appellee's Exhibit "A." We doubt the sufficiency of the proof to show trademark use of those, but, in any event, they are not relevant here.

The Assistant Commissioner found, we think correctly: "An examination of the exhibits submitted indicates that the mark as used includes all the features thereof in practically every instance, and apparently where the word is not used with the Turk's head design, it always, or almost always, appears elsewhere on the label in reasonably close association with the other use of 'Turco'."

■ It is our view that, upon the record presented, the issue must be determined upon the basis of a comparison of the composite mark of appellee with the registered composite marks of appellant, the marks of both parties being considered as entireties.

It seems to us that the respective word features of the marks have been unduly emphasized by counsel for appellant. The words of both parties are taken from their respective corporate names. There is nothing in the record before us which would seem to intimate that any objection to appellee *using* that part of its corporate name would be sustained in a judicial proceeding.

Incidentally, it may be said, as hereinbefore recited in a footnote, that the word "Tykor" is shown to have been registered in 1921 (a date prior to October 15, 1927, when appellant alleges it began using its registered trade-marks) by a predecessor of appellee for use as a trade-mark for a chemical agent used in foundries to hold together the core elements of a mold during a casting operation. We assume it to be a misspelling of "tie core."

Applied to insecticides "Tykor" has no suggestiveness or meaning whatever so far as we can discern, and the same apparently is true of "Turco."

In meaning, therefore, there is no resemblance between the words taking them alone, and, in our opinion, that is true with respect to appearance. Certainly when the respective composite marks are considered as entireties there is no resemblance in appearance.

With respect to sound, of course, only the words can be considered and it is only by mispronouncing the first syllable of "Tykor" and failing to pronounce the "r" at the end of the word that there could be any resemblance in sound. We are of opinion that a *possibility* of this character, based upon a mistake in pronunciation, is too remote for predicating upon it a likelihood of confusion or deception of purchasers.

The decision of the Commissioner is affirmed.

Affirmed.

O'CONNELL, Judge (dissenting).

It is my firm conviction that the decision of the Acting Commissioner of Patents should be reversed in this case and the opposition sustained for the reasons stated in the decision of H. H. Kalnpy, Examiner of Interferences, the controlling summary of which reads as follows:

"The applicant seeks registration of a composite mark of which the only spoken portion, and the dominant feature thereof, is the notation 'Tykor' as applied to 'insecticides, insect and stock sprays.'

"The opposer's right of action is predicated primarily on an allegation of prior use and ownership of the notation 'Turco', as a trade mark for insecticides.

"While it is true, as contended by the applicant, that its mark differs somewhat from that of the opposer, the examiner is nevertheless of the opinion that the notations 'Turco' and 'Tykor' are too nearly alike in sound to be used concurrently for the substantially identical goods here involved, without reasonable likelihood of confusion in trade. Therefore, the only statutory issue for determination herein re-

lates to priority of use as between the parties.

"The record satisfactorily establishes that the opposer is here the prior user of its mark as applied to insecticides. * *"