40 C.C.P.A.(Patents)

## IRMA HOSIERY CO. v. SCHULMAN.

**Patent Appeal No. 5919.**

United States Court of Customs and
Patent Appeals.

Argued Nov. 7, 1952.

Decided Jan. 14, 1953.

Rehearing Denied March 6, 1953.

Arthur N. Klein, Philadelphia, Pa., for appellant.

Ernest Schulman, pro se.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

JOHNSON, Judge.

This is an appeal in a cancellation proceeding pursuant to the provisions of the Trade-Mark Act of February 20, 1905, now 15 U.S.C.A. § 1051 et seq., from a decision of the Commissioner of Patents, acting through the Assistant Commissioner, 90 USPQ 40, affirming that of the Examiner of Interferences sustaining a petition by appellee to cancel the registration of appellant's trade-mark "Scheherazade."

It appears that appellant's trade-mark was duly registered in the United States Patent Office on August 31, 1948, Registration No. 440,410, as applied to women's hosiery.

The petition to cancel appellant's registered mark alleges that on or about the 25th day of June 1944, appellee adopted and commenced to use, and ever since that date has continued to use, the mark "Sheer-as-air" for men's, ladies', infants' and children's hosiery; that he has built up a large business and good will in connection with his said merchandise and products manufactured and sold under the trade-mark "Sheer-as-air," and that his said trade-mark constitutes an important and valuable asset of that business; that since June 25, 1944, he has continuously used the name "Sheerazair" as part of the firm name in connection with his business; and that appellant's trade-mark "Scheherazade" is confusingly similar to the trade-mark "Sheer-az-air" and the name "Sheerazair," so that concurrent use of said trade-marks would be likely to cause confusion or mistake in the minds of the public and also deceive purchasers.

Appellee took testimony and many exhibits were introduced. Briefs were filed by both parties and appellant was represented by counsel at the argument before us.

█ It appears from the record that both parties manufacture and sell hosiery; that appellee has been using its mark "Sheer-as-air," or "Sheer-az-air," or "Sheerazair" on its hosiery since about June 1944;[1]

---

[1] There is some question whether appellee has met his burden of proving priority of adoption of his alleged unregistered mark "Sheerazair." However,

and that appellant has been using its mark "Scheherazade" on its hosiery since about April 1947.

We concur with the examiner's statement that appellee's petition for cancellation is predicated upon appellee's use of the notation "Sheerazair," reproduced in that form or in the form of "Sheer-az-air," and that appellee's mark in its essentials consists of the term "Sheerazair." The examiner was of the opinion that appellant's mark, which is the name of the mythical relator of the stories of the Arabian Nights, differs radically in significance from the mark of appellee to informed persons. However, he regarded the factor of similarity of sound as more important, and he was of the opinion that the involved marks frequently would be mispronounced in such manner that the difference between them in this respect would amount to but little more than the relatively small differences present between the respective concluding portions of "zade" and "zair." He held, therefore, that their concurrent use on hosiery would be quite likely to cause confusion or deception of purchasers. The assistant commissioner affirmed the examiner, applying the same reasoning.

Appellant's mark "Scheherazade" contains five syllables, and appellant's mark "Sheerazair" has only three; moreover, the spelling of both marks appears to us to be materially different. Hence, we think the marks do not look alike. Further, we are of the opinion that the marks have entirely different significance. It seems clear to us that appellee's mark indicates a high degree of sheerness, and appellee conceded upon cross-examination that the plain or obvious meaning intended by the mark is that his merchandise is very sheer. On the other hand, as noted in the decisions below, appellant's mark would indicate to the informed the fictional relator of the stories of the Arabian Nights; to the less informed, the mark would, we think, at least carry the connotation of something exotic, rather than something very sheer.

This brings us to the question of similarity of sound, since the decisions below holding that there is likelihood of confusion are based primarily on the assumed possibility that appellant's mark will be so mispronounced that confusion with appellee's mark is likely. Appellant's mark is a five syllable word pronounced "Sche her a za de," with the principal accent on "za" and the secondary accent on "her." [2] Appellee's mark is a three syllable word apparently intended to be pronounced "sheer as air." It seems readily apparent that there must be a considerable mispronunciation of appellant's mark to produce a confusing resemblance in sound. We are of the opinion that the possibility of such mispronunciation is too remote for predicating upon it a likelihood of confusion or deception of purchasers, particularly when, as here, the marks are wholly dissimilar in connotation and substantially dissimilar in appearance. Turco Products, Inc., v. Tykor Products, Inc., Etc., 187 F.2d 622, 38 C.C.P.A., Patents, 903.

Accordingly, we are of the opinion that concurrent use of the involved marks on hosiery would not be likely to cause confusion or mistake of purchasers.

Both parties have cited many authorities to sustain their contentions. However, prior decisions are of little value in a cancellation proceeding because each case must rest upon its own distinctive facts. Likelihood of confusion from similar marks is largely a matter of opinion. Crown Overall Mfg. Co. v. Desmond's, 182 F.2d 645, 37 C.C.P.A., Patents, 1118; Lever Brothers Co. v. Geo. A. Hormel & Co., 173 F.2d 903, 36 C.C.P.A., Patents, 995.

Other issues were presented by appellant for our consideration should this court be of the opinion that the marks are confusingly similar. In view of our holding that

---

since we regard the issue of priority not controlling, we will consider his evidence to be sufficient, and an extensive discussion of the facts relating to priority is therefore unnecessary.

2. Webster's New International Dictionary, 2nd Ed., unabridged, 1949.

the marks involved are not confusingly similar, it is not necessary to discuss them.

For the reasons stated, the decision appealed from is *reversed*.

Reversed.

O'CONNELL, Judge (dissenting).

The responsibility for fixing likelihood of confusion arising from the use of similar marks in the sale of merchandise rests primarily with the Commissioner of Patents who acts through administrative experts and assistants assigned to the respective tribunals of the Patent Office. Congress has however endowed the judiciary with a supervisory power to revise and overrule their final or concurring decision where it is manifestly wrong and the evidence to the contrary is altogether convincing. Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657; Montgomery Ward & Co. v. Sears, Roebuck & Co., 49 F.2d 842, 18 C.C.P.A., Patents, 1386; Safeway Stores v. Dunnell, 9 Cir., 172 F.2d 649, 653; Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972.

The record in the case at bar is wholly devoid of any circumstance which would warrant the exercise of the drastic action taken by the majority. "Sheerazair" is a bona fide compound mark[1] registered in the State of New York, where appellee does business under the trade name of Sheerazair Hosiery Company. Appellee has likewise copyrighted the slogan "Wear Sheerazair" with the Library of Congress, and has registered it with the Department of State of the State of New York. Whatever protective rights appellee has thus achieved with respect to these last mentioned elements of the case need not however be here discussed.[2]

The law of this jurisdiction provides that trade-marks having one or more syllables in common and attached to identical goods, such as we have in the case at bar, may be confusingly similar, although there is wide difference in the remaining portions of the marks. In re Brockway Glass Company, 154 F.2d 673, 33 C.C.P.A., Patents, 969; Coty, Inc. v. Perfumes Habana, S. A., 190 F.2d 91, 38 C.C.P.A., Patents, 1180. Moreover, while competitive marks in a proceeding like this must be considered as a whole or in their entireties with respect to sound, meaning, and appearance, substantial identity between them in any one or more of those attributes is, in and of itself, fatal to the continuance of the use of his trademark by the late-comer. Skol Company, Inc. v. Olson, 151 F.2d 200, 33 C.C.P.A., Patents, 715; Cluett, Peabody & Co., Inc., v. Wright, 46 F.2d 711, 18 C.C.P.A., Patents, 937; Traders Oil Mill Company v. Lever Brothers Company, 100 F.2d 249, 26 C.C.P.A., Patents, 899; Mason, Au & Magenheimer Co. v. Hawley & Hoops, 86 U.S. P.Q. 272; Ex parte J. H. Clarke & Co., 95 U.S.P.Q. 226.

One seeking to steal a trade-mark, or a competitor's slogan of trade, usually incorporates some variant in the original to masquerade the piracy.[3] It is properly pointed out by the Examiner of Interferences in his decision below:

"* * * Regardless of the dissimilarities between them in other particulars, therefore, it is the opinion of the examiner that the similarities between these notations in sound are such that their concurrent use in connection with the identical item of hosiery would be quite likely to cause confusion or deception of purchasers. Cf. Marion Lambert, Inc., v. O'Connor, 86 F.2d 980, 24 C.C.P.A., Patents, 781; 477 O. G. 244; Weco Products Co. v. Milton Ray Co., 143 F.2d 985, 31 C.C.P.A., Patents, 1214, 568 O. G. 375; Hat Corporation of America v. Bry Block Mer-

1. See In re One Minute Washer Company, 95 F.2d 517, 25 C.C.P.A., Patents, 978.

2. See Safeway Stores, Inc. v. Dunnell, 9 Cir.1949, 172 F.2d 649, 655, certiorari denied, 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719; G. H. Packwood Mfg. Co. v. Cofax Corp., 183 F.2d 196, 37 C.C.P.

A., Patents, 1195, sec. 45 of the Lanham Act, 60 Stat. 445, 15 U.S.C.A. § 1051 et seq.

3. See Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097; Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.2d 106, 17 C.C.P.A., Patents, 1103.

cantile Corp. (53 U.S.P.Q. 647), Barbasol Co. v. Gillette Safety Razor Co. (82 U.S.P.Q. 58), R. B. Semler, Inc. v. Harris (68 U.S.P.Q. 31), and Kaylon, Inc., v. Rosenberg (78 U.S.P.Q. 209), wherein, respectively, the marks 'Voo' and 'Dew', 'Vray' and 'Dr. Ray', 'Byron' and 'Bry-Ann', 'Barbarossa' and 'Barbasol', 'Tremolo' and 'Kreml', and 'Ballerina' and 'The Bambalina' were held to be confusingly similar."

The examiner might have gone further, as was done by Judge Faris of the United States District Court in Standard Oil Co. v. Michie, 34 F.2d 802, 804, and likewise remarked:

"Cases of this sort, in addition to those above cited, can be cited by the dozens. So far have the courts gone upon the point as to lay down the rule that 'there must be such a wide distinction between the dissimilar words as to prevent any possibility of confusion in the use of the marks.' Lowney Co. v. Chandler & Rudd Co., supra.[4] Even if there shall exist a doubt, that doubt will be resolved against him who is last in the field. Postum Cereal Co. v. Farmers', etc., Ass'n, supra.[5]"

The Assistant Commissioner of Patents in declining to reverse the examiner's decision hereinbefore set forth disclosed an informed judgment when he expressed the following conclusion:

"* * * Obviously the two marks are entirely different in significance, but I am not satisfied that the same may be said with regard to appearance and sound. In regard to similarity in sound, the most important factor to be considered here, the examiner felt * * * would amount to but little more than the relatively small difference presented by the respective concluding portions 'zade' and 'zair.' * * * It is true that respondent's mark "Scheherazade" contains more syllables than does the petitioner's

mark as is apparent when the word is correctly pronounced by those informed persons who not only know and practice the precise pronunciation of respondent's mark 'Scheherazade,' but who are equally aware of its meaning as well. However, while the purchase of women's hosiery is a matter usually involving some degree of discrimination, yet sales are not confined to those who are well informed on the pronunciation of uncommon words. * * *"

There is no obligation imposed by law, as Justice Robb noted, which requires that marks attached to identical goods "be examined with a miscroscope to detect the minute differences" between a well-known brand and a phony trade-mark. Guggenheim v. Cantrell & Cochrane, 56 App.D.C. 100, 10 F.2d 895. Nor is it otherwise necessary, as Judge Hatfield sharply admonished in Celanese Corp. of America v. Vanity Fair Silk Mills, 47 F.2d 373, 18 C.C.P.A., Patents, 958, to resort to a study of etymology in order to avoid confusion and mistake.

Members of the bar and of various legal and trade associations are not unaware of the fact that due to a fundamental change in the prevailing philosophy of the majority, this court, in general, has now reversed its former position with respect to similar or identical trade-marks the use of which by the newcomer has been challenged as deceptive and misleading for the purpose of trading on the good will built up at great expense by the owner of the original mark in issue.

For example, the former decision of this court involving the same contested marks and the precise goods was recently reversed and overruled here by the majority because, as stated, "we are of opinion that the court arrived at an erroneous conclusion there in holding the involved marks to be so similar that confusion was likely to occur." Merritt-Taylor, Inc. v. C. B. Shane Corp.,

---

4. Infringement of trade-marks was present or unfair competition held to exist between "Gold Stripe" and "Gold Ribbon" in Lowney Co. v. Chandler & Rudd Co., 56 App.D.C. 248, 12 F.2d 189; and between—

5. "Wheat Nuts" and "Grape Nuts" in Postum Cereal Co. v. Farmers', etc., Ass'n, 58 App.D.C. 73, 24 F.2d 901.

195 F.2d 535, 538, 39 C.C.P.A., Patents, 916, 919.

The basic purpose of the Act of 1946, the Lanham Act, as defined by its legislative history and as noted by Judge Learned Hand in S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176, 178, certiorari denied, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527, is to the following effect:

" 'It would seem as if national legislation along national lines securing to the owners of trade-marks in interstate commerce definite rights should be enacted and should be enacted now.

" 'There can be no doubt under the recent decisions of the Supreme Court of the constitutionality of a national act giving substantive as distinguished from merely procedural rights in trade-marks in commerce * * * and * * * a sound public policy requires that trade-marks should receive nationally the greatest protection that can be given them.' (U. S. Code Congressional Service, 79th Congress, Second Session, 1946, p. 1277.)"

Appellee has been deprived of his property by the reversal of the concurring decisions of the tribunals of the Patent Office. The procedure here has stressed the trivial and ignored the important. The primary purpose of the law is to protect the purchasing public, and shoppers have a right to rely on standard brands and to do so free from hazards or designs laid by hucksters to trap the unwary. Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189; Mishawaka Rubber & Wollen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; In re Laskin Brothers, Inc., 146 F.2d 308, 32 C.C.P.A., Patents, 820; Senate Report No. 1333, 79th Congress, 2d Session, May 14, 1946; Robert, "The New Trade-Mark Manual," page 266.

Certiorari is not granted by the Supreme Court from judgments rendered by this court in matters relating to patents and trade-marks and there is none who can call our power to account. A bill to amend the Act of 1946 has been introduced in the Senate, however, and referred to the Committee on the Judiciary. The bill proposes a number of amendments to the Lanham Act, some formal but many effecting substantial changes. It was noted by Senator Wiley when he introduced the proposed legislation on August 6, 1951 [97 Congressional Record, page 9678]:

"* * * Four years of experience under the revised law have led trademark owners and their lawyers alike to agree upon amendatory provisions which will result in clarification, simplified administration, and substantive changes consonant with present day commercial practices and the tenets of our jurisprudence.

"Although it is probable that some individuals may disagree with some provisions of the amendatory bill, generally speaking it represents the assent of the legal and trade associations participating in the discussions."

In the meantime, it is my firm conviction that in the public interest, as well as by the rights of appellee defined by the terms of the statute, the concurring decisions of the tribunals of the Patent Office in the case at bar should be affirmed.

COLE, Judge (dissenting).

Sheerazair and Scheherazade, the two trade marks involved, are in my opinion, confusingly similar and consequently I must dissent from the findings of the majority to the contrary. As pointed out by the majority, appellant's mark is a five syllable word pronounced "Sche her a za de" with the principal accent on "za" and the secondary accent on "her," while appellee's mark is a three syllable word apparently intended to be pronounced "Sheer as air," and it thus seemed to the majority that there must be a considerable mispronunciation of appellant's mark to produce a confusing resemblance in sound.

That, in my opinion, is wherein the major difficulty lies as the likelihood of mispronunciation is manifest. This conclusion was given—deservedly so—considerable weight by the Assistant Commissioner

896

in affirming the findings of the Examiner of Interferences that the words were confusingly similar. As a practical matter, relatively few purchasers exercise precision pronunciation, and it is thought that the first two syllables, "Scheher" in Scheherazade, almost identical with Sheerazair, would be afforded primary emphasis with but little significance attached to the remaining portion of the word. The end result is confusion in trade.as to the origin of the merchandise purchased.

In the very recent case of Miles Shoes, Inc., v. R. H. Macy & Co., 2 Cir., 199 F.2d 602, 603, decided November 3, 1952 (opinion by Judge Augustus Hand), the court was concerned with the trade marks "GRO-PALS" and "GRO (representation of a tree) SHOE" as applied. to shoes and hosiery. The plaintiff's "GROPALS" mark was adopted in 1945, whereas the defendant, R. H. Macy & Company, had long previously used its mark. Holding that the marks were confusingly similar, Judge Hand, speaking for the court, said:

"* * * While it might be unlikely that a customer would confuse Macy's store with Miles, confusion as to whether the same manufacturer had made the goods seems to us likely. * * *

"* * * While the visual similarity between 'MILES GROPALS' and 'GRO (representation of a tree) SHOE' in itself might not be confusing, the fact that the goods on which the marks are affixed are identical, together with the additional fact that the two words are closely alike in sound, make confusion likely. * * * Why it should have chosen a mark that had long been employed by Macy and had become known to the trade instead of adopting some other means to identify its goods is hard to see unless there was a deliberate purpose to obtain some advantage from the trade which Macy had built up."

The sound reasoning expounded by that court should be applied with equal vigor to the facts in the instant case. For the reasons herein expressed, I believe the decision below should be affirmed.