40 C.C.P.A. (Patents)

## EUREKA WILLIAMS CORP. v. McCORQUODALE.

Patent Appeal No. 5917.
United States Court of Customs
and Patent Appeals.
June 3, 1953.

O'Connell, J., dissented.

E. J. Balluff, Detroit, Mich. (Francis D. Thomas and Wm. Wallace Cochran, Washington, D. C., of counsel), for appellant.

Wilmer E. McCorquodale, Jr., Philadelphia, Pa., and Theodore E. Simonton, Cazenovia, N. Y., for appellee.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON, Judges.

COLE, Judge.

The appellee has sought to register "Hotomatic" as a trade mark in connection with the sale of automatic gas water

heaters, establishing continuous use thereof since 1928. In opposition, the appellant has set forth his prior registrations, and antedating usage since 1920 of the mark, "Oil-O-Matic" as applied to liquid fuel burning devices and automatic electrically controlled and operated fuel heating systems.

■ It being stipulated that the products above mentioned possess the same descriptive properties, appellant contends that the respective marks are confusingly similar and thus, if used concurrently, likely to deceive or mislead prospective purchasers.[1] The record discloses that the applicant was prior in time in the adoption and use of his "Hotomatic" mark on domestic water heaters (instantaneous and thermostatically controlled) and that the opposer, although a leader in the field of automatic heating equipment, did not market a device specifically designed for domestic heating of water until 1933, registering his mark therefor that same year. Appellant alleges, however, by a display of advertising circulars reproduced in the record, that the oil burning devices bearing its "Oil-O-Matic" mark, in trade prior to 1928, were designed for a dual purpose, i. e., to heat the home and also to provide hot water for use therein. In answer to that contention, the Examiner-in-Chief held that as the circulars were undated, they were of no avail and with this finding we are in accord.

The Examiner of Interferences sustained the position taken by the opposer, but on appeal the Examiner-in-Chief found sufficient dissimiliarity to exist so as to negative the possibility of confusion in trade. From that decision, the opposer has taken an appeal to this court.

The case was originally argued before us on November 10, 1952, and on January 14, 1953, we rendered our decision which affirmed the decision of the Examiner-in-

Chief. Appellant filed a petition for rehearing within the statutory period, and the petition being granted, reargument was had thereon May 11, 1953.

As stated in the record, we are called upon to determine whether or not "Hotomatic" bears such near resemblance to the perviously adopted mark, "Oil-O-Matic" as, when applied to applicant's goods, will result or likely result in confusion, mistake or deception of purchasers.

It appears that the Examiner-in-Chief was largely influenced in his opinion by the decision of the Assistant Commissioner in the case of Eureka Williams Corporation v. Willoughby Machine & Tool Co., 86 U.S. P.Q. 170. That case, decided under the provisions of the Trade-Mark Act of 1905, involved the present appellant's previously registered mark, "Oil-O-Matic" for oil burners, as opposed to registration of the applicant's newly adopted mark, "Thermomatic." The goods of the applicant consisted of thermostatically controlled, gas conversion burners for domestic, commercial, and industrial heating purposes, so that the respective goods were in the same general descriptive class. The Assistant Commissioner determined that the marks, when considered in their entirety, were dissimilar and that no likelihood of confusion as to the origin of the goods was apt to result.

On appeal here, we reversed that holding by a divided court. Eureka Williams Corporation v. Willoughby Machine and Tool Co., 194 F.2d 543, 39 C.C.P.A., Patents, 832.

■ Appellant relies on our decision in that case as authority for the proposition that the marks here in issue are also too nearly alike to allow their concurrent usage in trade. We do not regard our decision therein as decisive of the issues here. As we have stated many times in the past, the controlling value of cases previously de-

---

1. Trade-Mark Act of 1946, § 2, 15 U.S. C.A. § 1052:
   "No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
   \*    \*    \*    \*    \*

   "(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers: \*  \*  \*."

cided in the field of trade-mark law is limited to the principles of such law and beyond that may not be extended, unless sufficient parallel in the factual basis is recognized. Manifestly, whether or not similarity between marks, if it exists, will result in confusion in trade is an intensely practical question to be determined only after a careful and independent analysis of the particular facts and circumstances involved in each case. Expressing it another way, holdings in current cases as to similarity are seldom influenced by, or based upon precedent. This principle has been in effect throughout trade-mark jurisprudence an finds reaffirmance as late as Kanmak Textiles, Inc., v. Carnac, Inc., 189 F.2d 1006, 38 C.C.P.A., Patents, 1148; Kensington Steel Co. v. Nichols Engineering and Research Corporation, 188 F.2d 397, 38 C.C.P.A., Patents, 979.

While it is true that "Omatic" or "Matic" is not to be considered as exclusively appropriated to appellant's trademark use, it is also true that a prefix sought to be used in combination therewith must be sufficiently distinctive and employed in such association as will obviate the likelihood of confusion as to the origin of the goods. Particularly is such a principle applicable when the respective goods of the parties are identical or closely related. It must, however, be constantly borne in mind that a trade-mark is to be viewed as an entirety, and the general impression it makes upon the purchasing public as such, when measured in the light of another's mark carefully appraised. In this respect, whether trade confusion will likely result from the concurrent trade usage of two or more marks alleged to be deceptively similar is largely a matter of individual judgment, and such factors as appearance, sound, and significance must be appropriately weighed.

The appellee herein urges that "Hotomatic" is not confusingly similar to "Oil-O-Matic" and emphasizes the difference in sound, meaning, and connotation in the prefix portion of his mark when compared to that of opposer. Furthermore, the appellee argues that there are specific differences of a substantial nature between the products of the parties which, coupled with the dissimilarity of the marks, negatives a likelihood of trade confusion. Considering the respective marks as a whole, and noting the type of goods to which each is affixed, we must conclude that the marks in issue are not confusingly similar.

What the law intends to prevent is "one person from passing off his goods or his business as the goods or business of another." American Steel Foundries v. Robertson, Commissioner, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317. While the Trade Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., under which these proceedings were instituted, does not require as a condition precedent to a finding of confusing similarity, that the products of the parties possess the same descriptive properties, such a finding is manifestly a major factor in determining that issue.

Here, the goods are not identical but are somewhat related and fall within the same general class of heating apparatus. That is all. The appellee, in his brief, after discussing the Willoughby case, supra, makes the following statement:

"In contrast, the appellee in the case now before the court adopted the mark Hotomatic in 1928 and applied it to a product having a function (domestic water heating) different from the function of the devices then marketed by appellant's predecessor. It was not until several years later (January 13, 1933) that appellant entered the field of domestic water heating as shown by its registration 304,965. Unlike the appellee in the Willoughby case, the appellee here was not a newcomer in a field already occupied by the appellant but in fact was the first to use an Omatic mark in this particular field.

"The first point of distinction in facts thus is that in the present case the goods of the parties are substantially different, whereas in the Willoughby case the goods were closely similar and competitive with each other."

With this statement, we agree.

We granted a rehearing in this case following release of the initial opinion be-

cause appellant's counsel was evidently under the impression that our comparison of the goods of the respective parties was to be construed and accepted as being in violation of the stipulation to which we have hereinbefore referred. In finding the marks "Hotomatic" and "Oil-O-Matic" not confusingly similar, we have not ignored the stipulation in the record to the effect that the goods involved possess the same descriptive properties. Such a stipulation, however, cannot foreclose the right of the reviewing court to point out and observe perfectly obvious differences, which actually exist, and which we feel were not intended to be overlooked because of a strict limitation that might be drawn from the language of such a stipulation.

Appellee's product is an ordinary water heater, the like of which we have common knowledge, and is designed to consume gas as a fuel. Appellant's product is a heating device for the home and, as the name implies, uses oil. The two are by no means alike in use and characteristics.

We find it quite easy to deny the opposition plea herein, determining as we do that the mark "Hotomatic," as applied to appellee's goods, is not confusingly similar to appellant's previously adopted mark, "Oil-O-Matic."

The rehearing granted in this case, followed by further oral argument and a memorandum on behalf of the appellant, has been given every consideration. We have found no reason, however, to disturb the conclusion reached herein.

For the reasons hereinbefore stated, the decision appealed from is affirmed.

Affirmed.

At the rehearing of this case, JACKSON, Judge, retired, was recalled to participate in place of GARRETT, Chief Judge.

O'CONNELL, Judge (dissenting).

Appellee appropriated "Omatic," the dominant feature of appellant's widely advertised mark, and combined that suffix with the descriptive prefix "Hot" to form the compound trade-mark "Hotomatic," under which he sells automatic gas-burning hot water heaters. The late Judge Hatfield branded procedure of that kind as illegal in the case of Bon Ami Co. v. McKesson & Robbins, Inc., 93 F.2d 915, 916, 25 C.C.P.A., Patents, 826, where he pointed out:

"If all that a newcomer in the field need do in order to avoid the charge of confusing similarity is to select a word descriptive of his goods and combine it with a word which is the dominant feature of a registered trade-mark so that the borrowed word becomes the dominant feature of his mark, the registered trade-mark, made valuable and outstanding by extensive advertising and use, soon becomes of little value, and, of course, each of the subsequent imitating trade-marks (and there would be many) is of value only to the extent that its users are trading on the good will of the owner of the original registered trade-mark."

"Warm-Ever," a term used in the sale of hot water heaters, was denied registration as a trade-mark merely descriptive of the heater, its character, use, or quality [1] in the case of In re Locke Stove Co., 154 F.2d 200, 33 C.C.P.A., Patents, 934, where this court unanimously affirmed the concurring decisions of the tribunals of the Patent Office, and in so doing Judge Jackson stated:

"We think it clear that the term sought to be registered in relation to its application to the heater can have no other meaning but that one could have warm or hot water whenever one wished, and that it is not necessary to remake the fire as often as the water is needed. This, it seems to us, is the immediate and obvious impression to be derived from appellant's mark as he is using it. It does not require any par-

---

ticular mental effort or reasoned thinking to arrive at such impression."

There is a controlling stipulation here to the effect that the goods of the parties are goods of the same descriptive properties. Judge Garrett pointed out, when this court early rejected "Coal-O-Matic" as confusingly similar to appellant's "Oil-O-Matic" in Cross v. Williams Oil-O-Matic Heating Corp., 48 F.2d 659, 660, 18 C.C.P.A., Patents, 1192, 1193, that in such a case "the issue is not whether oil and coal are of the same descriptive properties, but whether the devices that feed them into the furnaces are."

Moreover, our recent decision in the case of Eureka Williams Corp. v. Willoughby Machine & Tool Co., supra, should be controlling here despite the discussion to the contrary in the prevailing opinion. Inherent in the court's failure to follow that precedent is the implication that appellant is entitled to no monopoly with respect to its long and extensively used mark "Oil-O-Matic" or any part thereof.

During the hearings leading to the enactment of the Act of 1946, the proposition was advanced in certain quarters that any concern owning a trade-mark of world-wide reputation for forty or fifty years has had the mark long enough and should be required to share it with competitors.[2] That concept was wholly rejected by Congress, but the same result might well be effected by refusal to acknowledge the validity of a proper trade-mark. B. W. Pattishall, writing on Trade-Marks and the Monopoly Phobia, 50 Mich.Law Rev. 967 (1952) made this contribution to current trade-mark literature:

"* * * the 'restrictionist' trends and the contradictions found in many recent trade identification decisions are often traceable to misconceptions derived from the current 'monopoly phobia,' which have no logical relation to the true rights and considerations involved. Abetting this misguided and destructive reasoning are the false 'sign

posts' provided by the traditional words and phrases such as 'infringement,' 'property' and 'ownership' as well as the deep seated 'intrinsic value' notion. Yet the problem presented in almost any trade identification case is the simple one: *Has there been or is there likely to be an invasion or violation of an individual trade identity?* If so, decency and the public interest demand that it be prevented *insomuch as deception is likely;* that is, within the scope of likelihood of confusion. No more is needed—no more should be sought; but too often today these simple fundamentals are lost in a maze of semantic analysis and unwarranted concern for wrongful monopoly or special privilege.

"Is it not past time to free the law of commercial identity from the error which threatens to engulf it, and to recognize as well 'that business should be conducted as games are played among gentlemen?'"

Members of the bar and of various legal and trade associations are not unaware of the fact that due to a fundamental change in the prevailing philosophy of the majority, this court, in general, has now reversed its former position with respect to similar or identical trade-marks the use of which by the newcomer has been challenged as deceptive and misleading for the purpose of trading on the good will built up at great expense by the owner of the original mark in issue. Appellant makes this notable assertion in his brief:

"While the Lanham Act was heralded as offering trade-mark owners unprecedented protection, an analysis of cases decided by this Court shows that in the approximately five and one-half years before the Lanham Act became effective, this Court sustained 48 out of 66 oppositions—over 70%—involving issues of similarity of the marks or similarity of the class of goods, whereas in the approximately five and one-half years since the Act became effec-

2. See Alligator Co. v. Larus & Brother Co., Inc., 196 F.2d 532, 39 C.C.P.A., Patents, 939, 951; "Introduction," by Edward S. Rogers, page xi, Robert, "The New Trade-Mark Manual."

tive, this Court has dismissed 38 out of 57 oppositions involving such issues—about 66% of such cases."

The Lanham Act by its explicit provisions intended that the law of unfair competition should be applied in trade-mark litigation in order to promote the ends of justice. The Supreme Court in Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 130, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386, held that "the character of the conduct giving rise to the unfair competition is relevant to the remedy which should be afforded."

Conduct which constitutes unfair competition may be remedied by injunction and/or the award of damages by courts of equity. Those remedies, however, do not eliminate the right of this court to apply the law in a proper case against an applicant for registration. Robert, in the The New Trade-Mark Manual, at page 205 remarks:

"* * * But in determining the right of an applicant to register his mark, it would not seem to be out of keeping with the purpose and intent of the Act for the tribunals to consider such acts of the applicant as would affect his right to register, including his own misconduct (or 'unclean hands') in the use of the mark. *This is particularly true since the Act gives him new and substantive rights in his registration.*" (Italics supplied.)

"Generally speaking * * * in all cases of unfair competition it is the principles of old-fashioned honesty which are controlling." Jewel Tea Co., Inc., v. Kraus, 7 Cir., 187 F.2d 278, 282; Sinko v. Snow-Craggs Corporation, 7 Cir., 105 F.2d 450, Sections 44(h) and (i) of the Act of 1946 provide that owners of trade-marks, foreign and domestic, shall be entitled to the benefits of the law of unfair competition.

Additional views expressed in the prevailing opinion have been thoroughly discussed by me in other cases and I rely upon them here as part of this opinion. See Eureka Williams Corp. v. Kres-Kno Oil Burner Mfg. Co., 202 F.2d 763, 40 C.C.P.A., Patents, ——; Irma Hosiery Co. v. Schulman, 201 F.2d 891, 40 C.C.P.A., Patents, ——; Continental Coffee Co., Inc., v. Continental Foods, Inc., 202 F.2d 759, 40 C.C.P.A., Patents, ——. See also "The Right to Use and the Right to Register—The Trade-Mark Anomaly," by Julius R. Lunsford, Jr., published in the January 1953 issue of "The Trade-Mark Reporter," pp. 1–23.

If the recent decision and judgment of this court in Willoughby, supra, which held "Thermomatic" and "Oil-O-Matic" to be confusingly similar for automatic fuel burning devices, is not to be regarded here as a binding precedent because the judgment there was rendered by "a divided court," what about the value as a controlling precedent here of the decision and judgment in the case of Cross v. Williams Oil-O-Matic Heating Corp., supra, in which this court held, unanimously, that "Coal-O-Matic" was confusingly similar to "Oil-O-Matic" when likewise concurrently used on automatic fuel burning devices?

For the reasons and authorities herein cited, the decision of the Commissioner of Patents should be reversed.