42 C.C.P.A.(Patents)

**KELLOGG SWITCHBOARD & SUPPLY CO. (International Telephone and Telegraph Corp., Assignee, Substituted).**

v.

**TALK–A–PHONE CO.**
Patent Appeal No. 6076.

United States Court of Customs and Patent Appeals.

Feb. 8, 1955.

John I. Bellamy and Howard H. Darbo, Chicago, Ill. (Jones, Tesch & Darbo, Chicago, Ill., Edward D. Phinney, New York City, and Ralph B. Stewart, Washington, D. C., of counsel), for appellant.

Jules L. Brady and John Rex Allen, Chicago, Ill., for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

COLE, Judge.

Registration of the trade-mark "Talk-A-Phone" on the Principal Register of the United States Patent Office under section 2(f) of the Trade-Mark Act of 1946,[1] such mark being applied to inter-office and interplant communication systems, has been opposed by the prior user and registrant of "Select-O-Phone," a trade-mark applied to similar communication apparatus. The opposition is predicated on that clause of section 2(d) of said Act of 1946 relating to the likelihood of confusion, mistake, or deception of purchasers resulting from similarity between trade-marks. The Examiner of Interferences and Examiner-in-Chief of the United States Patent Office, in respective opinions, held that "Talk-A-Phone" and "Select-O-Phone," considered in their entireties, were not similar in sound, meaning, or appearance, and consequently were not likely to cause confusion, mistake, or deception of purchasers when applied to the goods of the parties. The decision of the Examiner-in-Chief is reported as Kellogg Switchboard & Supply Co. v. Talk-A-Phone Co., 98 U.S.P.Q. 31.

The International Telephone and Telegraph Corporation, surviving corporation of a merger with opposer, moved at the conclusion of the proceedings below to be substituted in place of opposer. The motion being granted by the Assistant Commissioner of Patents, that corporation appears here as appellant.

"Select-O-Phone" was adopted and registered as a trade-mark for private interoffice telephonic communication systems by a predecessor of appellant in 1916. Use of the mark has been continuous since that time, and advertising on a national level has been exten-sive. Appellant's intercommunicating "Select-O-Phone" system utilizes conventional telephone equipment. A plurality of stations within an office or factory may, for example, be wired for communication, each station having a telephone set. The user at one phone calls another on the system through a master automatic switchboard, a bell or buzzer notifying the called party. Appellant's apparatus is sold primarily to industrial and commercial establishments, prices varying, according to the extent of service desired, between $97 and $5,218.

"Talk-A-Phone" was adopted and first used by a predecessor of appellee in 1937. In its application for registration of the mark, appellee described its goods as interoffice telephonic communication apparatus consisting of speakers, amplifiers, and intercommunicating circuits therefor. This apparatus is essentially a loudspeaking system with no signal except the voice of the calling individual. The station called is permitted to answer without having to operate a switch or the like. Appellee's sales are also principally made to industrial and commercial establishments. Its prices are similar to those for appellant's system, but more than 50% of appellee's sales are for apparatus selling for approximately $150, uninstalled.

The operation of the respective systems of communication of appellant and appellee are known to the court and are fully and clearly described in the record, such description being supplemented by numerous exhibits showing the apparatus in question. While these systems differ in construction and in the manner of use, each system is intended for the same general purpose and are hence competitive.

In the light of the foregoing facts, the question presented is whether "Talk-A-Phone" so resembles "Select-O-Phone" as to be likely, when applied to goods of the same class, to cause confusion or

---

[1]. Section 2(f) provides that "Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. * * *" 15 U.S. C.A. § 1052(f).

mistake or to deceive purchasers as to the source of origin of such goods.

In its brief on appeal, appellant argues that the words "Talk" and "Phone" being purely descriptive of the appellee's goods, and therefore devoid of trademark significance, the dominant and distinctive characteristics of appellee's mark, if any, must be found in the features of form and cadence of the expression "Talk-A-Phone" as a whole, and in the suffix, "A-Phone." These features, according to appellant, constitute the dominant and distinctive elements of its previously registered mark, "Select-O-Phone," and thus the two trade-mark notations are virtually identical except for the descriptive prefix "Talk" in appellee's mark.

Although it is true that the word "Talk" is descriptive, and the form and cadence of both marks are similar, and the suffix "Phone" is common to each mark, we believe, for reasons we will now state, that the involved marks are not confusingly or deceptively similar.

The suffix "Phone" is generically descriptive of the goods of both parties, and cannot be subjected to exclusive trade-mark usage by anyone. A prefix sought to be used by a newcomer in combination with that descriptive suffix should be sufficiently distinctive, and employed in such association, however, as will eliminate any likelihood of confusion with another's prior use of that suffix. See Eureka Williams Corp. v. McCorquodale, 205 F.2d 155, 40 C.C.P.A., Patents, 1028. More particularly, and in broader perspective, we quote from the case of Aluminum Air Seal Mfg. Co. v. Trim-Set Corp., 208 F.2d 374, 376, 41 C.C.P.A., Patents, 764, as follows:

"* * * Although it is well established that a descriptive word can have, in itself, little or no trade mark significance and cannot properly be considered as being the dominant part of a trade mark, it is equally well established that the controlling and decisive principle is whether the competing marks are confusing when

observed in the light of their over-all presentations. In this respect, it is true that in the final analysis the contested marks should not be judicially dissected or component parts measured one against the other, as the purchaser himself does not dissect the marks, but is confused, if at all, by the mark as a whole. From a purely objective standpoint, however, existing and apparent similarities [and dissimilarities] in significance, sound, and appearance between constituent parts of trade marks cannot be overlooked as they provide a rational foundation upon which a conclusion may be formed as to the general subjective impression made by the marks upon the buying public."

Applying the above principles to the instant case, and being cognizant of the clear difference in sound, meaning, and significance between "Talk" and "Select," we now consider whether the general subjective impression made by the marks *as a whole* is such as to be likely to confuse the type of purchaser buying the respective products to which the marks in question are affixed.

The respective communication systems of appellee and appellant are, as heretofore indicated, quite expensive. They are purchased primarily by commercial or industrial establishments. Sales are many times made through trained purchasing agents who are required to be discriminating in the selection of what is bought, particularly where the product purchased represents a considerable, long-term investment. Seldom do business houses or individuals purchase expensive items on impulse, without proper reflection and discriminating care. In International Silver Co. v. American Silver Co., 37 F.2d 622, 623, 17 C.C.P.A., Patents, 871, for example, we said:

"We may take judicial notice of the fact that the purchase of silverware, sterling or plated, involves a considerable degree of care and dis-

crimination upon the part of the purchaser. The goods are valuable. They are not a matter of every day purchase upon the part of an individual, like food products or other products that require frequent replacement. * * *"

Certainly, this ruling may be applied with equal force in a case involving expensive telephonic equipment. That skilled buyers would clearly differentiate between a "Select-O-Phone" and "Talk-A-Phone" system of communication seems too manifest to us to admit of serious dispute, but, in any event, whether the buyers be skilled or otherwise, we do not think that the marks, considered as a whole, are likely to give rise to confusion in trade, mistake, or deception of purchasers.

For the reasons stated, the decision of the Examiner-in-Chief is affirmed.

Affirmed.